## Case No. 11,956.

### ROBINSON v. HOOK.

[4 Mason, 139.] [1]

Circuit Court, D. Maine    Oct. Term, 1826.

INFORMERS—JURISDICTION OF SEIZURE — ACCOUNT AND DISTRIBUTION—LIMITATIONS—DISAVOWED TRUSTS.

1. The informer of a violation of the revenue laws, by virtue of which a seizure is made, and condemnation of the property is obtained, can entitle himself to a reward or portion of the property only in cases provided for by some statute. Such services do not create a legal or equitable title to compensation.

2. The district courts, as courts of admiralty having jurisdiction of seizures, have also jurisdiction of the question, who are entitled to the proceeds as informers or otherwise.

3. The principal jurisdiction of the seizure being exclusive, the question, who is informer, is, it should seem, exclusive also.

4. But where the fact, that the party is informer, is not in controversy, a court of common law or equity may sustain a suit for an account and distribution of the informer's share.

[5. In cases of concurrent jurisdiction, courts of equity consider themselves within the spirit of the statute of limitations, and act in obedience to it, but in the consideration of purely equitable rights and titles they act in analogy to the statute, but are not bound by it.]

[Cited in Sherwood v. Sutton, Case No. 12,-

[1] [Reported by William P. Mason, Esq.]

782; Ex parte Storer, Id. 13,490; Hut v. Russell, Id. 5,943.]

[Cited in Buckingham v. Ludlum, 37 N. J. Eq. 145. Cited in brief in Derrickson v. Cady, 7 Pa. St. 30. Cited in Farnam, v. Brooks, 9 Pick. 243; Harlow v. Dehon, 111 Mass. 199; Johnson v. Ames, 11 Pick. 182; Keeton v. Keeton, 20 Mo. 539. Cited in brief in King v. White, 63 Vt. 160, 21 Atl. 535. Cited in Landis v. Saxton, 105 Mo. 490, 16 S. W. 912; Newson v. Bartholomew Co., 103 Ind. 529, 3 N. E. 163; Partridge v. Wells, 30 N. J. Eq. 179.]

[6. Cited in Speidel v. Henrici, 120 U. S. 386, 7 Sup. Ct. 611, and Naddo v. Bardon, 47 Fed. 790, to the point that time begins to run against a trust as soon as it is openly disavowed by the trustee's insisting upon an adverse right and interest, which is clearly and unequivocally made known to the cestui que trust; as when, for instance, such transactions take place between the trustee and the cestui que trust as would, in case of tenants in common, amount to an ouster of one of them by the other.]

This was a bill in equity for a discovery and account under the following circumstances: In August, 1813, the plaintiff [John Robinson], with some other persons, in a small boat, took possession of a small vessel, of a suspicious appearance and conduct, then hovering on the coast of Maine, and which was employed in making collusive captures of vessels coming from the British provinces, loaded with goods of British manufactures, on American account. At the time of the seizure, a small packet was thrown overboard by the officers of the vessel, which was recovered by the seizors, and was found to contain letters and documents, some with fictitious signatures, one wholly in cipher, and some in language and allusion designed for secrecy and private explanation. The whole disclosed a very extensive system of illicit commerce, carried on by citizens of the United States, and especially by some merchants at Boston, with England and the British provinces, for the purpose of illegally importing into the New England states goods of British manufacture. These papers were delivered to the defendant [Josiah Hook], who then was, and yet is, collector of the customs for the district of Penobscot, who transmitted copies to the government. The charges in the bill are, that by virtue of the information communicated by these papers, the defendant made sundry seizures of vessels and merchandises of great value, and procured condemnation thereof in the courts of the United States, and received the proceeds adjudged to the collector, including the share of the informer; that the plaintiff is entitled to the informer's share of such seizures; that the papers were so entrusted to the defendant for the purpose of procuring such condemnations. It therefore prays a discovery and account, and general relief.

The answer of the defendant admits the receipt of the papers, and annexes copies of them; but denies, that any seizure whatsoever was made by him in consequence of the information communicated by them; but admits, that on a seizure made by another col-

lector, he received what might be deemed the informer's share, and after deducting his own expenses, he paid a moiety of the residue to the plaintiff and his brother, who was jointly interested with the plaintiff. It also relies on the statute of limitations, and denies all equity in the plaintiff, &c. &c. The general replication was filed, and the cause being set down for a hearing upon the pleadings and evidence, came on to be heard at this term.

Greenleaf & Longfellow, for plaintiff.
Shepley & Orr, for defendant.

STORY, Circuit Justice. This is a cause of a somewhat extraordinary nature. The secret papers disclose one of the most extensive enterprises for the illicit importation of British goods from the British provinces, into the United States, on American account, during the late war, by means of collusive captures and otherwise, which was probably ever undertaken in violation of our laws. That its success was not as complete, as the plan was broad, is owing, in a great measure, to the seizure of these very papers, which had the double tendency of deterring the parties from the full execution of the scheme, and of stimulating the vigilance of the officers of our own government to defeat it. I am sorry to perceive, that the duces facti are native merchants, and that their own examinations, taken in this very cause, leave not the slightest doubt of their intentional guilt. I will not attempt to characterize these transactions in the language which belongs to them; though it cannot be concealed, that they are such as must carry along with them the reproaches of the country, and probably, in moments of cool reflection, the pains of self-condemnation to the parties themselves. Some things are indeed made clear by these papers, which were involved in much embarrassment and obscurity in the course of the prize proceedings of the late war. In the lenient administration of prize law, which was adopted by the courts of the United States during this period, and especially in lending an indulgent ear to the claims of our own citizens, it is some consolation to know, that the justice of those sentences of condemnation, which admitted of most controversy, have, in an unexpected manner, been confirmed by facts recently brought to light. In considering the present case, it is material to observe, that however great may be the merit of the plaintiff and his coadjutors, in refusing the bribes offered to them for the suppression of these papers, and in putting them into the possession of the government for public purposes, and however great may be the benefit derived to the government, by the facilities thus afforded to detect frauds, and to escape from mischievous violations of its rights, it is not within the cognizance of this court to administer any remedy for such services. So far as they are entitled to reward, beyond that gratitude, which must always be felt for public benefactors, it belongs exclusively to another department of the government, to recognise and adjust the claim. Courts of equity can only enforce existing rights, which are already vested in the parties, and give such remedy as ex æquo et bono ought to attach to them. It is material also to state, that the present bill is exclusively framed upon the notion of a legal right. In its general structure it proceeds upon the ground, that the plaintiff is entitled to the share of the informer, in cases of property seized and condemned for illicit traffic, in consequence of his information. It states, that sundry seizures were made, or claims interposed, in behalf of the United States, by the defendant, by means of this information, and that the defendant received large sums of money, as the informer's part upon the condemnations, on those seizures and claims, which he ought to account for and pay to the plaintiff. If there be any allegation in the bill more broad in its terms, it is too loose and indefinite to found any decree upon. There is no charge of any contract or agreement between the parties, as to what use should be made of the papers, or that the defendant should act as general agent of the plaintiff in relation to them, and apply them for his benefit in the best manner he could, and account for any moneys so received, deducting a reasonable compensation. I do not mean to suggest, that, upon the present state of the evidence, such a charge would materially aid the cause; but I wish to show, what in one aspect of the cause may be important, that no special trust or confidence is asserted, and that so far as the bill avows merits, it is upon the fact that the plaintiff is informer.

What, then, is to be deemed the nature of the bill? It cannot proceed upon any loose notion, that a party, who gives material information, is entitled at common law, or in a court of equity, to a part of the proceeds of any property seized and condemned by means of such information, or to any particular compensation for such information, when given to officers of the government. It is the duty of every citizen to aid in detecting violations of the laws, and enforcing the administration of public justice. His reward, in such cases, is to be found in the consciousness of a performance of duty to his country, and in the approbation of his fellow citizens. There is no pecuniary recompense attached by the principles of law to services of this nature. He who brings a felon to public justice, or refuses to conceal a crime, is certainly entitled to great credit for his good conduct; but it has never been supposed that a contract could thereby be implied to share in the property, which should accrue to the government or its officers upon the conviction. The law does not award pecuniary compensation for the performance of general duties; and it is only where some statute has held out, from policy, a specific reward, that the public faith is

pledged to allow it. The bill, then, must be understood to claim the informer's share of forfeited property in such cases only as are provided for by some statute; for a more general right is not acknowledged in the principles of our jurisprudence. It would have been well if the bill had, in this respect, aimed at something like certainty and accuracy; and had put the court in possession of the cases in which an informer is entitled to a share, and what that share is, to the extent at least of the claims asserted by the plaintiff. Whether in strictness the bill can be maintained without such allegations (for otherwise it is a mere searching and inquiring bill), I do not decide, because the point has not been pressed by counsel; and I am, generally, disinclined to take exceptions, where the merits of the cause, as it has been argued, can be disposed of without insisting on them. For the same reason I pass over the question, whether the proper parties are before the court. Upon the plaintiff's own showing other persons were concerned in the original enterprise, by which the secret papers were obtained, and no reason is stated in the bill, why they are not made plaintiffs, or why the plaintiff is to be deemed the sole informer entitled to compensation. The cause is not without its difficulties from this omission. But waiving all discussion upon these collateral questions, I come to the consideration of the points, which have been mainly relied upon by counsel, to maintain or defeat the bill.

The first is, that the court has no jurisdiction to entertain the cause. Its jurisdiction over the parties, as citizens of different states, is not controverted. But it is said, that causes of this nature are not within the proper cognizance of a court of equity. The argument addressed to the court is, that seizures like the present are causes exclusively of admiralty jurisdiction, and that the right to distribute the proceeds attaches as a necessary incident to the court, having possession of the cause, in the same exclusive manner as the seizure itself. Consequently, if the plaintiff has any remedy at all, it is a remedy to be administered upon his petition, as informer, to the admiralty court, which awarded the condemnation and distribution of the proceeds. Of the right of the courts of the United States, exercising admiralty jurisdiction, to decree a distribution of the proceeds subjected to condemnation as incidental to the possession of the principal cause, no legal doubt can be entertained. It is a point long since settled in the practice of this court, and the doctrine has been fully recognised by the supreme court in the case of The Josefa Segunda, 10 Wheat. [23 U. S.] 312, 322. The claims of the parties who are entitled to distribution may be brought forward and specified on application to the court in the original decree. But if no such application is made, the parties in interest may obtain the same result by means of a supplemental libel, bringing the matter before the cognizance of the court.

Usually the form of the decree in common cases is, "that the proceeds be distributed according to law." And if no controversy arises, this is sufficient. The collection act of 1799, c. 128, § 89, provides, that the proceeds of all seizures, after condemnation by the court, shall be paid over to the collector, and he is directed to pay and distribute the same according to law. But this does not take from the court the right to ascertain who are the parties entitled to distribution, or clothe the collector with any such authority. He is a mere ministerial officer, who is to distribute the forfeiture under the direction and supervision of the court.

The authority to distribute being then clearly vested in the court having possession of the principal cause, the next consideration is, how far that authority is exclusive. By the judiciary act of 1789 [1 Stat. 72] c. 20, § 9, it is provided, that the district court shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation, or trade, of the United States, where the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burthen, and also exclusive original jurisdiction of all seizures on land or other waters, than as aforesaid, made. If the jurisdiction over the seizure, then, is exclusive, it would seem to follow, that it is also exclusive over the incidents, of which the distribution is one. It might otherwise happen, that a conflict of jurisdictions might arrive, and that different parties might be held entitled in different courts. Nor am I able to perceive, how any judgment, in any court of common law or equity could oust the proper court, possessing cognizance of the seizure, from the free and full exercise of its distributing authority. Cases of this sort are familiar in the admiralty. The settled rule, acknowledged by the courts of common law, is, that where the admiralty has exclusive jurisdiction of the principal cause, it has the like jurisdiction over all the incidents. Therefore, in matters of prize, it has been held, that the admiralty possesses exclusive jurisdiction to ascertain who are the captors, because it is an incident to the general jurisdiction, and included in the power of distribution. See Smart v. Wolff, 3 Term R. 323; Lord Camden v. Home, 4 Term R. 383, 1 H. Bl. 476, 524; Willis v. Commissioners of Prizes, 5 East, 22; Duckworth v. Tucker, 2 Taunt. 7; Keane v. The Gloucester, 2 Dall. [2 U. S.] 37; Penhallow v. Doane, 3 Dall. [3 U. S.] 54; The Brutus [Case No. 2,060]; The Dash [Id. 3,584]. Courts of common law decline any interference in the matter. The same principle applies to cases of seizure by the strictest analogy, for these are exclusively cognizable in the district court, and the exclusive authority to ascertain the distributees seems to be a natural, if not an inseparable incident. The same public policy which justifies the exclusive appropriation of

the former to a particular tribunal, points with equal cogency to a like appropriation of the latter. Even in cases, partaking more of the nature of concurrent jurisdiction, at least under certain circumstances, the court obtaining possession of the cause by a process in rem, acquires an exclusive right over the incidents. As in cases of salvage on the instance side of the court, it has always been supposed, that the possession of the cause gave the court an exclusive authority, not only to decree salvage, but to decide who were the salvors, and how the salvage should be distributed. It has never been imagined, that any other court could overhaul or modify the distribution so made, or decree other persons to be salvors. And certainly the mischiefs of such an interference would be very extensive, and would create embarrassments to all the parties in interest. A court of common law can dispose only of the interests of the parties litigating before it; a court acting in rem can dispose of the claims of all persons asserting any title to the property, and adjust conflicting equities. In England, the court of exchequer has exclusive jurisdiction of revenue seizures and of all their incidents. Harg. Law Tracts, 226, 227; Attorney General v. Lade, Parker, Exch. 57, 69. At least, after some research, I have not been able to trace an instance in which any question of this nature has been litigated in other courts. In informations on seizures, the informer is always, as seizor, named a party, and if he is entitled to any share of the forfeiture, the judgment of the court ascertains and decrees it; if not entitled, the whole is adjudged to the crown. Malden v. Bartlett, Parker, Exch. 105; Mod. Pr. Exch. 150, 387; The Bolina [Case No. 1,608]. Upon the principles of the common law any person might seize for the benefit of the crown. If a part of the forfeiture, by law, belonged to the informer, he was entitled to seize and prosecute in the exchequer; and the latter has authority, in cases of different seizures of the same goods by different informers, to compel an interpleader, and decide who is the informer entitled to priority. Harg. Law Tracts, p. 227. This authority is believed to be exclusive. Some inconveniences and frauds having arisen from allowing any persons whatsoever to make seizures for breaches of the revenue laws, the authority was, at least as early as the statute of 14 Car. II. c. 11, §§ 15, 17, limited to officers of the customs, and other persons specially appointed by certain officers of the crown for that purpose. Harg. Law Tracts, p. 227, and note. In the British system no person seems to be deemed an informer, entitled to share in the distribution, unless he is the seizor, and named, as such. in the information (Bacon Abr. "Smuggling," F; Harg. Law Tracts, p. 227); and in the judgments in the exchequer, the usual clause of distribution of the forfeiture states the proportions, in which the parties are to take, and to whose use (Mod. Pr. Exch. 150, 387,

&c.) Persons, who are merely instrumental by giving information in causing seizures to be made by the proper officers, do not seem to have any vested right in the forfeiture, but are left to the bounty of the government or its officers. Our system differs, in several respects, from that of England. Suits for forfeitures are required to be brought in the name of the United States. Seizures can only be made by officers of the customs; and informers, as such, are never parties to the original proceedings. The collectors of the customs are enjoined to cause suits to be brought for all forfeitures, and are authorized to receive the proceeds, after condemnation, from the proper court, and to "pay and distribute the same, without delay, according to law." The forfeitures are distributable as follows: One moiety is divided, in equal shares, between the collector, naval officer, and surveyor, or such of such officers as there are in the district. But if the forfeiture is recovered in pursuance of information given to the collector by any person except the naval officer or surveyor, the one half of such moiety is given to such informer. The other moiety is for the use of the United States, unless in certain excepted cases. Act 1799, c. 128, §§ 70, 89, 91 [1 Story's Laws, 633, 653, 655; 1 Stat. 678, 695, 697, c. 22]. It seems clear, therefore, that, by our laws, the person, giving the information by which the recovery is had, has a vested right in the proceeds of the forfeiture, as much so as the collector, or other officer of the customs, or the United States. The only question, which is open for litigation, is, whether, he is such an informer. Little light can therefore be gathered, to assist us in the present inquiry, by the course of proceedings of the court of exchequer, as they do not furnish a close analogy.

Upon the whole, the strong inclination of my opinion is, that the court, having cognizance of the seizure, has exclusive jurisdiction over the question, who is the informer, entitled to share in the distribution, if that matter is put in controversy; and such, I consider, the bearing of the decision of the supreme court in The Josefa Segunda, 10 Wheat. [23 U. S.] 312. But in cases, where the fact of the party's being informer is not denied, I can perceive no reason, why a suit may not be maintained, at common law or equity, for his share of the proceeds in the hands of the collector, any more than in other cases, where money is received in trust to be accounted for and paid over to another. The money, received by the collector, is to be distributed according to law, in the proportion to which the distributees are entitled. No doubt can be entertained, that the United States, and the naval officer and surveyor may maintain such suits for their shares; for the parties and the amount are ascertained by law. The money, received by the collector, is money received to their use. There is nothing to be controverted or settled be-

tween him and them. It is like the common case of captors suing prize agents in courts of common law for their shares of prize money, which have been decreed by the court, and paid over to agents for distribution. The courts of common law will not adjudge upon the question, whether the property is prize or not, or who are the captors; but these questions being settled by the admiralty, they consider the proceeds in the hands of the prize agent, as money had and received to the use of those who have been adjudged captors, and distributable according to the respective shares of the parties. See Decatur v. Chew [Case No. 3,721], and cases there cited; Good v. Blewitt, 13 Ves. 397. Nor do I entertain a doubt that a bill in equity will lie in aid of the jurisdiction of the court, having cognizance of the seizure, to compel a discovery from the collector, whether the plaintiff was not the informer, and admitted by him as such. And if the fact is admitted, and a bill should be properly framed for relief, I can perceive no reason, why a court of equity may not, under such circumstances, decree the party to account. The conflict of jurisdictions, or of cross·distributions, could not arise.

It is not, however, my wish to decide the present cause upon the particular ground of jurisdiction. Indeed it would not extend to the whole bill, for there is a sum of money received by the defendant, to which he admits the plaintiff to have had an equitable interest of some sort, as an informer or quasi informer; and the question is, whether the share, already paid to the plaintiff, is his fair proportion. I shall have occasion, hereafter, to notice this matter more at large. In respect to the bill itself, in its general structure, the difficulty of maintaining jurisdiction over some of the questions propounded at the bar arises, not from its own allegations, but from the denials of the answer and the nature of the proofs.

The next point of defence relied on, is the general statute of limitations of Massachusetts and Maine, in respect to personal actions, limiting those founded on simple contracts, &c. to six years. It is said, that the statute of limitations is not a bar to suits in equity, but only to suits at law. In respect to cases purely of equitable jurisdiction and equitable rights, this may be true in a strict sense; but even then courts of equity adopt the analogy of the statute of limitations, and hold the equitable right barred by the same lapse of time, which would bar it if it were a legal right. Of course, if there are other equitable considerations, which, upon principle, ought to avoid the bar, courts of equity will recognise them; but if the case is naked, the bar is unhesitatingly applied. But in cases of concurrent jurisdiction, as of accounts, where the party may proceed, either at law or in equity, it appears to me, that the statute of limitations applies with equal force in both courts. If it be not a positive bar in equity, it seems entitled to the same universality of application in equity, as it would have at law. It would otherwise follow, that a legal right might be extinct at law, and yet be of validity in equity, under exactly the same circumstances, and stripped of all grounds for conscientious interference. This distinction appears to me deserving of consideration, and has entered somewhat into the doctrines supported by the more recent and exact authorities. See Bond v. Hopkins, 1 Schoales & L. 413, 428; Hovenden v. Lord Annesley, 2 Schoales & L. 607, 630; Kane v. Bloodgood, 7 Johns. Ch. 90; Murray v. Coster, 20 Johns. 576; Stackhouse v. Barnston, 10 Ves. 453, 465, 469; Cholmondeley v. Lord Clinton, 2 Jac. & W. 1, 149, etc.; Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 152, 177, note; Sutton v. Earl of Scarborough, 9 Ves. 75; Webster v. Webster, 10 Ves. 93; Beckford v. Wade, 17 Ves. 87.

The present bill is, in substance, a bill for an account of moneys received for the use of the plaintiff; and as far as any moneys are shown by the proofs to have been received, the receipt was more than six years before the filing of the bill. The answer utterly denies the receipt of any moneys for the benefit of the plaintiff, which have not been accounted for. The bill alleges no promise within six years; nor do I perceive any testimony which establishes any· distinct acknowledgment of a debt within six years, sufficient to take the case out of the statute of limitations. Even if Bartlett be a competent witness, he is but a single witness, and his statements are too loose and general to found any satisfactory conclusion in favor of such an acknowledgment.

In this posture of the case, the principal argument relied upon to avoid the effect of the statuteable·bar is, that the present is a case of trust, and trusts are not within the statute of limitations. It is remarkable, that the bill itself does not, as has been already hinted, undertake to assert it to be a case of direct and positive trust, founding the general relation of trustee and cestui que trust between the parties. If it anywhere glances at such a relation, it is merely argued by way of inference to be drawn from the general complexion of the facts. In this view there is some difficulty in giving full effect to the argument. But when it is said, that the statute of limitations does not apply to cases of trusts, it is material to consider the sense in which that proposition is to be understood. In respect to trusts, which are strictly such, and recognized and enforced in courts of equity only, such as express trusts created by the parties for particular purposes, the doctrine is, in general, true. So long as the relation of trustee and cestui que trust is admitted, in cases of express trusts to exist between the parties, the very duties to be performed by the trustee prohibit him, in general, from setting up such a bar. Acts, which, done by a stranger, might be deemed adverse, when

done by a trustee, admit of a very different interpretation. But even in cases of express trust, if an open, public adverse claim is set up by the trustee against his cestui que trust, and the trust itself is denied as any longer subsisting, there is much reason to hold, that the bar ought to be admitted to arise from such period. Certain it is, that if the trustee recognises another person as the cestui que trust, long possession and continued enjoyment of the property under such recognition will entitle the substituted cestui que trust to set it up as a bar in equity. That was the decision in the great case of Cholmondeley v. Lord Clinton, 2 Jac. & W. R. 1, and furnishes a rule for all cases falling under the like analogy.

But as to cases of merely constructive trusts, created by courts of equity, or cases which in a sense are treated for some purposes as implied trusts, to which, however, legal remedies are applicable, the doctrine cannot be admitted, that the statute of limitations does not embrace them. If it were otherwise, there is scarcely a single case of bailment, or of money received to use, or of factorage concerns, or of general account, into whose service the doctrine might not be pressed. The doctrine appears to me well established, that in cases, like the present, of merely constructive trusts, where there are concurrent remedies · at law and in equity, the statute of limitations is a good bar, and may be pleaded to a suit in equity as well as at law. If there be any contrariety in the authorities on this subject, the more recent appear to me to be settled on the most solid foundations. It would be a waste of time to go through them at large. The most material of them are collected and commented on, with great ability by Mr. Chancellor Kent, in Kane v. Bloodgood, 7 Johns. Ch. 90; and the doctrine itself is vindicated with a luminous but masculine brevity, by Mr. Chief Justice Spencer, in Murray v. Coster, 20 Johns. 576. I gladly refer to these cases as nearly exhausting the topic. It has, however, been recently illustrated, in perfect harmony with the opinions in the New York cases, by one of the most elaborate judgments of that eminent judge, Sir Thomas Plumer. I allude to the decision in Cholmondeley v. Lord Clinton, 2 Jac. & W. 1. See, also, Sutton v. Earl of Scarborough, 9 Ves. 71; Hovenden v. Lord Annesley, 2 Schoales & L. 607; Beckford v. Wade, 17 Ves. 87; Sturt v. Mellish, 2 Atk. 610; Prevost v. Gratz, 6 Wheat. [19 U. S.] 504; Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 152. I think, therefore, the statute of limitations clearly applicable to the present case; and as no sufficient ground is stated to avoid its operation, in the averments of the bill or in the facts in evidence, it might well govern the decision of the court. My desire, however, rather is to put the cause upon its general merits, independent of the statuteable bar; and with this view, I shall proceed to the last point made at the bar, and that is,

that upon the whole facts the plaintiff has no equity.

However general and sweeping the allegations of the bill are, they are met by a full denial in the answer, and at the hearing the proofs narrowed down the plaintiff's rights, as informer, to the consideration of three cases only, viz. The Traveller, The Caroline, and The George.

There are one or two general remarks necessary to be made before entering upon the particular consideration of these cases. The bill, as has been already suggested, proceeds against the defendant solely as receiver of the informer's share, belonging to the plaintiff, of certain forfeitures successfully enforced in pursuance of his information. It charges that the defendant, at the time of the delivery of the packet to him, was collector of the district of Penobscot, and that by means of the information furnished by the plaintiff, through the disclosures in the packet, he caused seizures to be made or claims interposed in behalf of the United States, and did procure condemnation in the district, circuit and supreme courts, of sundry vessels and cargoes, and did receive the informer's share of the same, which he ought to have paid to the plaintiff. It is incumbent on the plaintiff, then, to make out the substance of the charge, and to establish that seizures were made, claims interposed, and condemnations procured, and the informer's share received by the defendant, before he can successfully assert a claim against the defendant. The terms of the revenue act of 1799, c. 128, § 91, are, "that in all cases where such penalties, fines, and forfeitures shall be recovered in pursuance of information given to such collector by any person, other than the naval officer or surveyor of the district, the one half of such moiety (i. e. the collector's share, &c.) shall be given to such informer." This clause constitutes the very foundation of the plaintiff's claim. He stands upon the rights hereby conferred, and can draw no other statute to his aid. It is incumbent on him then to show, that a recovery of the forfeiture has been made in pursuance of his information given to the collector. Now it is explicitly denied by the answer, that any seizure whatsoever was made, or claim interposed by the defendant, in pursuance of any information given by the plaintiff to him. The seizures in the cases of The Traveller and The Caroline were made by other collectors, and the claim in behalf of the United States, in the case of The George, was interposed by another collector. So that, in point of fact, the plaintiff never stood in the relation of informer to the defendant, as seizing collector. Nor is any evidence produced by the plaintiff, which clearly establishes that, in either of these three cases, the condemnation was procured in pursuance of any information given by the plaintiff. In respect to The Traveller and The George, the answer expressly negatives it; in respect to The Caro-

line, it was controverted by the seizing collector, and finally adjusted by compromise. The answer farther goes on to deny, that any money was received as the informer's share in either of the cases, except The Caroline, and the plaintiff has not disproved this allegation. Upon this broad cast of the defendant's case, it is certainly surrounded with difficulties. He has not chosen to introduce into his proofs the testimony of either of the seizing collectors, so that there is nothing to assist the court in the ascertainment of the point, how far, or in what shape, he was deemed an informer aiding in the recovery of the forfeiture by those officers.

A closer inspection of the facts, applicable to each of the three cases, does not relieve the pressure of these difficulties. In the first place, as to the Traveller. She was seized by the collector of the district of Frenchman's Bay, before any information of the contents of the packet was, in fact, communicated. The seizure was not, therefore, caused by any such information; and there is no evidence to show, that the condemnation was assisted by it. There is this additional circumstance, that the plaintiff was present at the time of the trial and condemnation of that vessel, and then consulted counsel, and brought forward a claim for the informer's share of the proceeds, which was either abandoned or not admitted by the parties in interest, or by the court. This was as early as the latter part of the year 1813, and the plaintiff has ever since slumbered upon his supposed rights, acquired under that seizure, with a knowledge that the claim was then resisted.

In the next place, as to the Caroline. The sum of 2000 dollars was received by the defendant, as the informer's share, out of the proceeds of that seizure, upon a compromise with the collector of Waldoborough. The defendant deducted 200 dollars for expenses, and divided the residue, taking one half to himself, and paying over the other half to the plaintiff and his brother, David Robinson, in equal shares. This transaction was as early as the year 1816. No complaint or dissatisfaction appears to have been expressed, at the time, in respect to this settlement. The plaintiff's present bill does not attempt to impeach it, or to assert that it was wrong or fraudulent. And after so long an acquiescence, with so few materials for accurate judgment, it would be too much to require the court to repudiate that which the parties, at the time, seem to have thought an equitable distribution.

In the last place, as to the George. She was originally libelled as prize by persons claiming to be captors, and brought into the district of Frenchman's Bay, where she was seized, in January 1814, by the collector, on the suspicion of a collusive capture; and in the prize proceedings a claim was interposed by the collector, in behalf of the United States, on this ground. The capture was ultimately adjudged to be collusive; and in the supreme court she was, at February term, 1817, finally condemned to the United States for this cause. I allude to this fact, though not strictly in evidence, because the parties admitted it to be as stated in the report of the case in 2 Wheat. [15 U. S.] 278. I do not dwell on the point, that the condemnation was in a case of prize, and not on a libel for a breach of our revenue or municipal laws, in which alone the rights of informers are provided for, because, as a seizure was made for the forfeiture, and the proceedings were stayed solely by the claim and ultimate condemnation in the prize proceedings, I am not prepared to say, that all the parties interested might not be entitled in the same manner as if the forfeiture had been insisted upon in an original libel by the collector. The distribution seems to have been made by the government upon the same principles. But what I rely on is, that it is denied in the answer that any information was derived from or through the plaintiff, which in any degree conduced to the condemnation of the George, and no evidence has been adduced to prove the fact, and no connexion is shown between the parties or transactions in the case of The George, and those alluded to in the letters contained in the packet. No such connexion was pointed out at the argument, and the court has not of course any means of ascertaining it. Yet if any material information had been derived from these letters, they would certainly have been used on the trial of the George, or at least the nature and extent of such information could have been traced and pointed out by those, through whose agency the suit was conducted. There is the more doubt upon this point, because the disclosures in the packet were obtained in September, 1813, and the interception of the papers must have been immediately known to the persons, who planned the illicit enterprises; and the collusive capture of the George did not take place until January, 1814. Ample time was therefore given to recall any intended shipments, and it is not at all probable, that the same parties would have subjected themselves to the risk of a detection by the government, founded upon the possession of such documents.

Upon the whole, my opinion is, that upon the proofs in the cause, it is impossible to support the plaintiff's bill. If he has any merits, he has been unable to present them in a shape by which the court can afford him redress, or those merits are of a character not belonging to the jurisdiction of a judicial tribunal. In my judgment the bill ought to be dismissed, with costs. The district judge concurred in this opinion.