Buckingham v. Ludlum.

ALICE BUCKINGHAM

*v.*

JAMES LUDLUM.

1. A person rendering services under a contract invalid by the statute of frauds, may recover their value in an action on the *quantum meruit*.

2. A prior judgment, pronounced by a competent court, between the same parties, on the same cause of action, and which decides the merits of the cause of action, is conclusive upon the parties.

3. A prior judgment concludes only parties and privies, not strangers. A judgment against the surviving member of a firm does not conclude the representatives of the deceased partner

4. Trusts which fall within the proper, peculiar and exclusive jurisdiction of courts of equity are not subject to the statute of limitations.

5 Courts of equity are not within the terms of the statute of limitations, and while they follow it by analogy, they will not apply their rules, founded on analogy, when it is against conscience to do so.

6. A creditor of a firm may have relief in equity, for the payment of his debt against the separate assets left by a deceased partner, if. the surviving partner be insolvent and the firm assets exhausted.

7. The representatives of a deceased partner cannot set up the statute of limitations against a creditor of the firm, so long as the surviving partner continues liable for the debt and has a right to seek contribution, from the estate of the deceased partner, for the payment of the debts of the firm.

8. One partner cannot set up the statute of limitations against the other, in a case where there have been dealings, in respect to the partnership affairs, within six years, whether they consist in the conversion of assets into money, or the application of assets in discharge of liabilities.

On hearing on petition of Joseph W. McElroy and answer of receiver and proofs taken in open court.

*Mr. John R. Emery*, for petitioner.

*Mr. Frederick W. Stevens*, for receiver.

VAN FLEET, V. C.

The questions now before the court for decision arise on a petition presented, in this suit, by Joseph W. McElroy, praying that an order may be made, directing the receiver appointed in this cause to pay to him the sum remaining due on a judgment recovered by him against James Ludlum, as surviving member of the firm of James Horner & Co. For many years prior to the 9th of June, 1874, James Horner and James Ludlum were engaged, as copartners, in the manufacture of steel, at Pompton, in the county of Passaic, under the name of James Horner & Co. On the date last named the partnership was dissolved by the death of Mr. Horner. Mr. Horner left a will by which, after a few unimportant gifts to others, he gave the whole residue of his estate to his daughter, Alice Buckingham. Very soon after the death of Mr. Horner, serious disputes arose between Mrs. Buck-

ingham and Mr. Ludlum, and in August, 1874, Mrs. Buckingham filed a bill in this court asking for the appointment of a receiver of the partnership assets; also for an account and settlement of the partnership affairs, and, after the debts of the firm were paid, that the surplus assets might be divided. On this bill an order to show cause was granted, and after Ludlum had put in his answer, and both parties had been fully heard, the court made an order, bearing date November 17th, 1874, appointing Ludlum receiver, with power to collect and receive all moneys and other property belonging to the firm, and out of the proceeds of the property of the firm to pay the debts of the firm, and to take and retain possession of the property, with a view to the ultimate settlement of the affairs and business of the firm, under the direction of the court.

The petitioner, Joseph W. McElroy, acted as superintendent of the steel works of the firm from July 1st, 1869 to the date of its dissolution. The service thus rendered, he claims, was rendered under a contract, by which the firm agreed that he should be entitled to receive, as compensation for his services, one-eighth of the yearly profits made in the manufacture of steel, they guaranteeing that his share of the profits should not, in any year, be less than $3,000. It is admitted that the contract was not in writing, and that it was made some time before he commenced service under it, so that it was not performable within a year of its date. The petitioner, in 1877, brought an action in this court against Ludlum and the other persons in interest, on the alleged contract, asking an account of the profits. Ludlum answered, admitting the contract; Mrs. Buckingham, by her answer, denied it, and on the issues thus raised, this court, and the court of errors and appeals, both decided that the petitioner was not entitled to an account. The decision of both courts was put upon two grounds; first, that a definite and complete contract, such as would entitle him to an account, was not proved; and second, if it had been it could not be enforced, it being invalid by the statute of frauds. *McElroy* v. *Ludlum, 5 Stew. Eq. 828.*

The petitioner, subsequently, on the 10th of September, 1880, brought an action at law against Ludlum, as surviving partner,

and declared on a *quantum meruit*. Mrs. Buckingham was notified of this suit by Ludlum, and requested to defend it at her own expense, and she consented to do so, but on Ludlum's refusing to put in the pleas which her counsel advised were necessary to a proper defence, she declined to interfere. Ludlum interposed a plea of the general issue, and on the trial of the action, a judgment of over $21,000 was recovered. The petitioner has attempted to enforce his judgment. He has succeeded in collecting $1,600, but the proofs render it quite clear that this is all he can, at present, get by means of legal process. He has exhausted his legal remedy. His debt, he claims, is a liability of the firm, and should, on the plainest principles of justice, be paid out of the firm assets. All the firm assets are now in this court, and he asks the court to apply so much of them as may be necessary for that purpose, to the payment of his debt.

The fact that the petitioner's services were rendered under an invalid contract, does not in the slightest degree, impair his right to recover their reasonable value, for it is a well-established legal principle that where one person renders valuable services to another, under a contract invalid by the statute of frauds, and the person to whom the services are rendered, after getting them, refuses to perform his part of the contract, the person rendering the services may, in such event, treat the contract as a nullity and recover the value of his services in an action on the *quantum meruit*. *Smith* v. *Smith's Admr.*, *4 Dutch. 208* ; *Rutan* v. *Hinchman, 1 Vr. 255*, [*2 Vr. 496* ;] *McElroy* v. *Ludlum, 5 Stew. Eq. 828*. This principle, it will be observed, is both just and logical. It is just because it prevents the person to whom the services were rendered from getting them without making compensation ; and it is logical because his promise being invalid, is no promise in law, and the matter stands, therefore, just as it would if the services had been rendered in the absence of an express promise.

Nor do I think the petitioner's right to recover in this proceeding is at all affected by the judgment of dismissal pronounced against him in his action for an account of profits. There can be no doubt that a prior judgment, pronounced by a competent court, between the same parties, on the same cause of action, and

which decides the merits of the cause of action, is conclusive upon the parties, and a complete bar to a subsequent suit. But here, it will be seen at a glance, that the two actions of the petitioner stand upon grounds fundamentally different. In the first he was seeking to enforce an express contract, which entitled him to a specific share of the profits, regardless of the value of the services he had contributed in earning them; while that which he is now prosecuting, is based exclusively on the fact that he had rendered valuable services to this firm, at their request, without stipulation as to price, but under a promise implied by law, that he should be paid what his services were reasonably worth. A judgment in the first case, adjudging either that the contract on which that suit was founded, was not proved, or that the contract was invalid, it is obvious, could not touch, even collaterally, the question whether the petitioner had rendered services for which, in justice, he ought to be paid. The petitioner's present claim is unaffected in any way, in my judgment, by the judgment pronounced against him in the previous suit.

Nor do I think it can be held that the judgment recovered by the petitioner, at law, against the surviving member of the firm, binds or concludes the receiver or Mrs. Buckingham. It is, however, admissible in evidence for the purpose of showing what steps have been taken by the petitioner, by means of legal remedies, for the enforcement of his debt, and also to show that he has unsuccessfully exhausted the means provided by the law for its collection. As a general rule, a judgment concludes parties and privies, but not strangers. And by parties is meant all those who had a right to make defence, or to control the proceeding and to appeal from the judgment. Persons not having these rights are regarded as strangers. And by privies is meant such persons as are privies in estate—as donor and donee, lessor and lessee, and joint tenants; or privies in blood—as heir and ancestor; or privies in representation—as executor and testator, or administrator and intestate; or privies in law—where the law, without privity in blood or estate, casts land upon another by escheat. Taking this as the rule of decision, it is clear that the receiver and Mrs. Buckingham stand as strangers to the pe-

Buckingham *v.* Ludlum.

titioner's judgment, and in this proceeding may lawfully contest both his right and the amount of his debt. Chancellor Walworth twice decided that a judgment against the surviving partners did not bind the representatives of the other partner. *Smith* v. *Ballantyne, 10 Paige 101; Leake and Watts Orphan House* v. *Lawrence, 11 Paige 83,* [*2 Den. 577*].

The case stands, then, in this position: the petitioner has rendered valuable services to this firm, for which, he alleges, he has not been paid; he has established his debt against the surviving partner by a judgment at law, and has unsuccessfully exhausted all the means the law provides for its enforcement; this court, at the instance of the representative of the deceased partner, has taken possession of all the firm property, and it is now subject to its order; the petitioner's debt, if honest and legal, is a valid charge both at law and in equity against the firm assets, and ought to be paid out of them; they can only be reached through the intervention of this court. In this condition of affairs, it seems to be plain that, in order to prevent a failure of justice, this court is bound to hear the petitioner's application, and if his debt is found to be just and legal, to direct its payment.

No objection is made to the method in which the petitioner seeks relief. It is not insisted that relief of the nature asked can only be given in a suit regularly brought, to which all persons in interest are made parties and afforded an opportunity to make defence. In addition to those already discussed, the petitioner's application is mainly resisted on two grounds—first, that he has already received full compensation; and, second, if he has not, his remedy is barred by the statute of limitations.

Compensation to the extent of $3,000 a year has already been made. This, it is insisted, is all the petitioner's services were reasonably worth. I cannot concur in that view. Careful and patient consideration of the evidence has produced a strong conviction in my mind that his services were worth more, and would readily have commanded more in a rival establishment.

At the time of the commencement of his service, in 1869, he had been a worker in iron for over twenty-five years; he had invented and patented a process for making steel from pig iron;

the firm had become the owners of the patent, but found that others could not use it as skillfully and advantageously as he could; just before the commencement of his service, the petitioner had determined to leave the firm and go to Connellsville, Pa., and take service in steel works there, in which he had a pecuniary interest; he abandoned this project, at the instance of the firm, and on the faith of their offer. The service he rendered the firm was skillful, constant, faithful and highly beneficial; under his superintendence the capacity of their works was enlarged and their product increased; he supervised the process of manufacture from its inception to completion; so great was the confidence of his employers in his skill and judgment that neither gave any attention to that department of their business which was conducted under his management. No fault is found either with the quality or extent of his work. It is admitted that he was skillful and faithful, and that his services were very valuable. This being so, the question is, What does he reasonably deserve to have? If the services rendered were such as are in general demand, their value may be shown by proof of what is usually paid for like services to others, possessing similar skill, experience and judgment. The customary rates are then the criterion of market value. In such cases, the court may properly receive evidence of the compensation paid to others, possessing like qualifications, for similar services. Such evidence has been offered in this case. This evidence, considered in connection with that which shows the character and extent of the petitioner's services, has strongly persuaded me that he fairly deserves to have a compensation of $4,000 a year. His experience and skill would, I am convinced, have commanded an annual salary of that amount in almost any rival establishment. My mind has hesitated between the sum just named and a larger one. His services were unquestionably of great value; if they were not the main cause of the firm's prosperity, they contributed largely to it; they were rendered, as I believe, under a confident expectation that he was entitled to participate in the success of the business, and the greater its success, the larger his compensation would be. His hopes naturally stimulated his zeal and in-

duced him to do his utmost. I am not sure that the sum allowed affords adequate compensation, but, after much reflection, I am satisfied it more nearly approaches what is just and fair, under the circumstances, than either a larger or smaller sum.

The remaining question is, Is the petitioner's remedy, against the partnership assets, in the hands of the court, barred or not by lapse of time? His debt was in full force, and his cause of action perfect when this court took possession of the partnership assets. His term of service commenced July 1st, 1869, and closed June 9th, 1874, and the receiver was appointed November 17th, 1874. As already stated, the order appointing the receiver empowered him to pay the debts of the firm. In this respect, it followed the prayer of the bill.

It will be remembered that Mrs. Buckingham, by her bill, among other things, asked that Ludlum should be required to account, that the partnership affairs might be settled, and, after the debts of the firm were paid, that the surplus assets might be divided. Now, if the order appointing the receiver created a trust in favor of the creditors, it is entirely clear, I think, that their debts were relieved from the operation of the statute of limitations. The trust was one which this court alone could administer and enforce. Not a penny of the money realized from the trust properly could be applied except in accordance with the orders of the chancellor. The rule is settled. Trusts which are not cognizable at law, but fall within the proper, peculiar and exclusive jurisdiction of courts of equity, are not subject to the statute of limitations. *Wanmaker* v. *Van Buskirk, Sax. 685; Marsh* v. *Oliver, 1 McCart. 259; McClane's Administratrix* v. *Shepherd's Executrix, 6 C. E. Gr. 76.* Chancellor Kent defined the rule as follows: " The trusts which are not within the statute [of limitations] are those which are the creatures of courts of equity, and not within the cognizance of a law court, and that, as to those other trusts which are the ground of an action at law, the statute is, and in reason ought to be, as much a bar in one court as in the other." *Kane* v. *Bloodgood, 7 Johns. Ch. 90, 113.* And Judge Story, in speaking on the same subject, said: " As to cases of merely constructive trusts, cre-

ated by courts of equity, or cases which are treated, for some purposes, as implied trusts, to which, however, legal remedies are applicable, the doctrine cannot be admitted that the statute of limitations does not embrace them." *Robinson* v. *Hook, 4 Mason 139, 152.* Now, it is undoubtedly true, as a general rule, that the mere appointment of a receiver does not suspend the operation of the statute, or vary the position of the parties to the litigation under it. *Harrisson* v. *Duignan, 2 Dru. & War. 295.* But it is also true that when it is necessary for the court to protect its jurisdiction, and accomplish the purposes for which it took charge of the subject in dispute, it will hold that its interference suspended the operation of the statute, and it will adjudge the rights of the parties as they stood at the time its jurisdiction attached. *Wrixon* v. *Vize, 3 Dru. & War. 104.* In this case, it will be observed, the court did something more than it ordinarily does in such cases—simply take charge of the property in dispute, pending the litigation, to provide for its safety and see that it is preserved. At the instance of Mrs. Buckingham, and with the consent of Ludlum—for the order appointing him receiver was made with his consent—the court took charge of the partnership effects, for the purpose of liquidating the partnership affairs—to collect the assets, to pay the debts, ascertain the surplus remaining for distribution, and the rights of the parties therein, and making final distribution. Suppose this had been effected by a voluntary arrangement between the parties, expressed in writing and properly executed, can it be doubted that a trust would have been created in favor of the creditors, which would have relieved their debts from the operation of the statute? The supreme court of Pennsylvania expressly decided, in *Heckert's Appeal, 24 Pa. St. 482,* that where a debtor makes an assignment of all his estate, for the benefit of his creditors, an express trust is created in behalf of his creditors, which relieves their debts from the operation of the statute; and that the assignor cannot set up the bar of the statute against a debt which was alive when the assignment was made, but was not paid until after it had been due more than six years. Judge Woodward, in delivering the opinion of the court, said: "We

are of opinion the statute of limitations has no application here. This was a direct and continuing trust, and was exclusively cognizable in a court of equity. * * * Such a trust is not touched or affected by the statute of limitations."

The judicial action taken in the case under consideration, effected, substantially, the same result that a debtor who makes an assignment for the benefit of his creditors, accomplishes by his own voluntary act. He makes over his property in trust, first, for the payment of his debts, and, second, if anything shall be left, that it may be returned to him. The court here, at the instance of the litigants, sequestered the partnership property, first, for the payment of the debts of the firm, and, second, to enable it to adjust the rights of the parties in the surplus assets, and then make a division of them in accordance with such adjustment. Can it be successfully contended that such a sequestration, because it is effected by judicial action, taken in the due course of the administration of justice, and with the consent of the litigants, is less effectual for the protection of the creditors, whose right it was, at the time of the sequestration, to look first, and to the exclusion of all others, to the property sequestered, for the payment of their debts, than a voluntary assignment, made for the same purpose, would be ? I do not think it can.

But whether the action of the court created a trust or not, it is clear, I think, that in taking possession of the partnership property, the court changed the remedy of the creditors against the assets from a legal to an equitable remedy. After the assets were in court they could not be reached or touched except by permission of the chancellor. No action at law would lie against the receiver for the debts of the firm, nor could such an action be maintained against the representative of the deceased partner, and a judgment against the surviving partner would be utterly ineffectual against the property under the control of this court. No levy could be made upon it without the permission of the chancellor. It may safely be said, then, that after the partnership assets were in court, the remedy of the creditors of the firm against them was exclusively equitable. To such remedies the statute of limitations does not apply. Courts of equity are not

within the terms of the statute, and while they follow it by analogy, and have adopted as a rule, the limit of six years, in analogy to the statute, as the time within which a suitor, in certain cases, must bring his action, yet they do not adhere to it so inflexibly as to feel obliged to deny relief to every suitor who asks their aid after the expiration of the limited time. The rule on this subject is expressed as follows by one of the vice-chancellors of England : " Where the circumstances of the case are such as to make it against conscience to apply the rule founded upon this analogy, the court will not enforce it. It has been said that if a creditor files a bill on behalf of himself and others, and permits it to be dismissed before decree, the statute would apply. I dissent from this proposition, for I think that the court would protect a creditor against an accident of that kind. I have no doubt that if a creditor intended to file a bill, and it appeared that the rule adopted by analogy to the statute would affect his demand, but that a bill had been filed before, by another creditor, and that he had, in confidence that the former suit would be prosecuted, abstained from filing his bill, the court would not apply its rule." *Sterndale* v. *Hankinson, 1 Sim. 393.*

Lapse of time does not bar the debt, but simply the remedy, and in deciding whether the creditor has lost his remedy or not, courts of equity generally govern their action by the principle laid down by Lord Camden in *Smith* v. *Clay, 3 Bro. C. C. 639, note ;* " A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence. Where these are wanting, the court is passive and does nothing."

The proofs show, I think, very clearly, that since the dissolution of the firm the petitioner has neither slept upon his rights, nor been slothful in their pursuit. Indeed, the judicial records of the state bear testimony that since 1877 he has been engaged in an almost constant struggle in the courts to secure their vindication. Prior to that time he had been lured into inaction.

Mr. Ludlum swears that, after his appointment as receiver, the petitioner delayed presenting his claim, in legal form, at his request, and upon his representation that the court would give it attention at the proper time. This representation may have been unauthorized and Mr. Ludlum's promise without legal force against the persons standing in the rights of his deceased partner, but, upon the question whether the petitioner has been guilty of such laches as should, in conscience, bar his remedy, they are of the utmost importance. The evidence shows that the petitioner has not lacked diligence—he has been vigilant, but mistaken. At the outset he misconceived his remedy; but for that the questions now before the court would have been settled long ago. To declare, in such a case, that the suitor is barred of his remedy by his laches would, according to my judgment, be an abuse of the rules of justice.

But another rule of equity jurisprudence pertinent to the question under consideration, remains to be mentioned. It has long been settled that a creditor of a firm may have relief in equity, for the payment of his debt, against the separate assets left by a deceased partner, if the surviving partner be insolvent and the firm assets exhausted. Lord King so held as early as 1692. *Lane* v. *Williams, 2 Vern. 277, 292.* Lord Eldon recognized this doctrine in *Gray* v. *Chiswell, 9 Ves. 118,* and in *Ex parte Kendall, 17 Ves. 513,* and Sir William Grant affirmed it in *Devaynes* v. *Noble, 1 Mer. 528, 564.* And Chancellor Kent applied it, in all its length and breadth, in *Hamersley* v. *Lambert, 2 Johns. Ch. 508.* There the firm was dissolved in 1803, by the death of one of the partners. The surviving partner made a payment on account of the complainant's debt in 1806, and on January 1st, 1807, admitted the sum remaining due at that date, and in October, 1807, was discharged under the insolvent laws of the state of New York. In 1809, the guardian of two of the infant heirs of the deceased partner paid certain moneys into court belonging to his wards, which were afterwards invested in public stocks. In May, 1814, eleven years after the dissolution, the complainant filed his bill, asking a decree that his debt be paid out of the public stocks, which from the time of their purchase re-

mained in court. The chancellor, after recognizing the doctrine established by the prior adjudications, said, "that neither delay, nor lapse of time, nor dealing with the survivor, nor calling for and receiving part of the debt from the survivor, amounts to a waiver or bar of the claim upon the assets of the deceased," and he made a decree directing the payment of the complainant's debt out of, the fund in court. And Lord Cottenham, in a more recent case, seems to have been of opinion that the representatives of a deceased partner could not successfully set up the statute against a creditor of the firm, so long as the surviving partner had a right to call upon the estate of his deceased partner to contribute to the discharge of the liabilities of the firm. In *Winter* v. *Innes, 4 Myl. & Cr. 110,* he said : " When the simple case shall occur of the representatives of a deceased partner setting up the statute of limitations against a claim by a creditor of the firm, it will be to be considered whether such a defence can prevail whilst the surviving partner continues liable, and the estate of the deceased partner continues liable to contribute at the suit of the surviving partner. If the equity of the creditor to go against the estate of the deceased partner is founded upon the equity of the surviving partner against that estate, it would seem that the equity of the creditor ought not to be barred, so long as the equity of the surviving partner continues, as that would be to create that circuity which it is the object of the rule to prevent." It is a familiar principle of equity that a creditor may, in collecting his debt, avail himself of all the securities and remedies of his debtor. This is the doctrine which I think the court would be bound to apply if the petitioner was here seeking relief, not against the partnership assets, but against the separate estate of James Horner, deceased. His present position, I think, gives him higher and stronger equities. He is here seeking relief against the fund which, by law and by right, stands primarily liable for the payment of his debt, and which would ultimately have to pay it, even if it were possible for him to collect in the first instance from some other source. This being so, I think it would be a denial of justice to refuse him relief.

There can be no doubt under the rule laid down in *Todd* v. *Rafferty's Admr., 3 Stew. Eq. 254,* and in the same case on appeal, *7 Stew. Eq. 552,* that for any payment Ludlum has made, or may hereafter make, in discharge of the petitioner's debt, he will be entitled to allowance in the final settlement, for it was there held that one partner cannot set up the bar of the statute against the other in a case where there have been dealings in respect to the partnership affairs within six years, whether they consist in the conversion of assets into money, or the application of assets in discharge of liabilities; and that the statute does not begin to run against each item from the time it becomes part of the account, but if part of the account be within six years, that part of it draws after it the items before six years, so as to protect them from the operation of the statute.

The petitioner is entitled to relief. In my judgment, he reasonably deserved to have $4,000 a year for his services, amounting in the whole to $19,766.68. Of this sum he has already received $15,000, leaving $4,766.68 still due. For this sum, with interest, he is entitled to an order, together with costs.