JAMES DEVLIN, PLAINTIFF IN ERROR, v. JOHN COLLIER ET AL., DEFENDANTS IN ERROR.

1. A mortgagee cannot convey to a third person the premises mortgaged, himself retaining the debt intended to be secured.
2. Such a conveyance is a nullity.

---

Prior to December 18th, 1868, Jarvis Wanser, Sr., was the owner in fee of a farm of one hundred and four acres of land, more or less, in East Brunswick, Middlesex county, New Jersey, of which the tract of fourteen and eighty-two one-hundredths acres in question formed a part. On that day he conveyed, in fee by deed, with covenant of seisin, right to convey and general warranty, the tract in controversy to Bergen Low, and took a purchase-money bond and mortgage

on the same. Low went into possession, and, September 8th, 1869, conveyed the premises to one Whitmee, subject to the mortgage given to Wanser. On October 31st, 1870, Jarvis Wanser, Sr., being still the holder of the bond and mortgage given by Low, and not in possession of the premises covered by the mortgage, conveyed to William H. Wanser his farm of one hundred and four acres, more or less (not excepting therefrom the tract so sold to Low), in fee, the deed containing covenants of seisin, right to convey with general warranty.

At that time, and until some time after the death of Jarvis Wanser, Sr., the premises in question were in the possession of Whitmee, the grantee of Low, the mortgagor, from whom defendants claim title.

William H. Wanser mortgaged the one hundred and four acres to George J. Miller, and gave a second mortgage to Jarvis Wanser, Sr. Afterwards, George J. Miller foreclosed the mortgage given him by William H. Wanser, and made Jarvis Wanser, Sr., a party to the suit by reason of his said second mortgage. No reference in said suit was in anywise made to said mortgage held by Jarvis Wanser, Sr., and given by Low on the fourteen and eighty-two one-hundredths acres in controversy, nor was any decree had thereon.

Neither Bergen Low, the mortgagor, nor Benjamin Whitmee, the party in possession and owner of the fourteen and eighty-two one-hundredths acres in question, were made parties defendants.

By virtue of the proceedings under the foreclosure, George J. Miller purchased the one hundred and four acres, more or less, at sheriff's sale. George J. Miller, dying testate, devised all his estate to his wife, Catharine H.

On April 19th, 1882, Catharine H. Miller conveyed to the plaintiffs the said farm of one hundred and four acres, more or less, " excepting, however, from the above-described premises, so much of said premises as were conveyed by Jarvis Wanser and wife, by deed dated December 18th, 1868, to Bergen H. Low, recorded in Middlesex county clerk's office, in Book 114 of Deeds, at page 210, for fourteen and eighty-

two one-hundredths acres, strict measure," which are the premises in controversy in this suit.

On December 21st, 1885, Catharine H. Miller conveyed, in consideration of $1, whatever interest she had in the said tract of fourteen and eighty-two one-hundredths acres to the plaintiff.

This is the plaintiff's title.

The defendant's title is as follows :

December 18th, 1868, Jarvis Wanser, Sr., and wife conveyed by deed, with covenant of seisin, right to convey and general warranty, the tract of fourteen and eighty-two one-hundredths acres in question to Bergen H. Low, in fee simple, and took a purchase-money mortgage thereon to secure said Low's bond. Bergen Low shortly after conveyed the tract to Benjamin F. Whitmee, who held the same, and paid the interest on said Low mortgage to Jarvis Wanser, Sr., until the death of said Wanser, when said mortgage was foreclosed by the administratrix of Jarvis Wanser, Sr. ; the said Whitmee, being then the owner of the premises, was made party defendant. The premises were sold, under the foreclosure proceedings, to Jarvis Wanser, Jr. That Jarvis Wanser, Jr., and wife conveyed the premises, through subsequent grantees, to the defendants, November 10th, 1888, and these defendants went into possession under their title deeds. The possession of the premises has always been in Low and Whitmee and their several grantees, under whom defendants claim title.

For the plaintiff in error, *Alan H. Strong.*

For the defendants in error, *C. H. Runyon* and *George C. Ludlow.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The primary legal question to be decided in this case is, whether a mortgagee can convey to a stranger the mortgaged premises, at the same time retaining the debt it was given to secure.

In *Jackson ex dem. Curtis* v. *Bronson*, 19 *Johns.* 325, it was declared that such an alienation was a nullity, and it is deemed that the doctrine thus broached is the only one that will harmonize with the decisions of the courts of this state.

We have many adjudications on this subject, and they are all manifestly founded on the theory that land conveyed by way of mortgage stands as a mere security for the debt, and subsists as an estate only to the extent that it is subservient to such purpose. This is the fundamental idea infusing all our judicial expressions upon the subject, and all common law institutes relating to the tenure of realty, so far as they have been thought inconsistent with such principle, have been consistently repudiated. It is the oft-repeated declaration to be found in our reports, that the mortgagee is possessed of no estate in the land, except such as is necessary for the realization of the debt due to him, and this definition obviously excludes most of the rights and incidents ordinarily belonging to the proprietorship of the realty. The inefficacies of a title inherent in a mortgage, construed in the light of the doctrine thus stated, is forcibly pointed out by Mr. Justice Southard in the case of *Montgomery* v. *Bruére,* 1 *South.* 260. Referring to the construction of these instruments in courts of common law, the opinion thus proceeds, viz.: "A mortgagee is there considered as a freeholder for no single purpose of office, of benefit, or of burthen. He can hold no public office; he can exercise no public duty requiring an estate in lands. He cannot gain a settlement; his property is personal assets in settling his estate; if he devises it, it will not pass by the word lands or real estate, nor is it necessary that his will be executed with the legal requisites to pass them. It is not subject to curtesy or dower, the necessary attendants upon legal estates in lands. Even a transfer of a debt, in any way, terminates it. It has not a single characteristic of a legal estate. It is a mere security for the money, and a power to gain possession of the land in order to make it."

Such was the view expressed in the Supreme Court and sanctioned by the Court of Errors, in the year 1818, and

which has since been repeatedly enforced in all our courts. The prevalence of the principle was signally exemplified so recently as the case of *Kircher* v. *Schalk,* 10 *Vroom* 335, it being there declared that a mortgagee whose debt was due could not maintain replevin for a specific chattel which the mortgagor or his assigns had severed from the realty. This result was an admitted modification of the common law doctrine, and the opinion read in the case, after stating that doctrine, proceeds to declare that " in this state a different opinion of the legal status of a mortgagee is adopted, and one more consonant with his actual position as fixed by the interference of equitable tribunals. The mortgage is regarded not as a common law conveyance on condition, but as a security for debt, the legal estate being considered as subsisting only for that purpose."

But it is not necessary to refer to the cases in greater detail, for it is deemed entirely indisputable that, by the system thus built up by a number of adjudications in this jurisdiction, it has been conclusively established that a mortgagee is vested with no estate in the land conveyed to him, except such as is reasonably requisite to enable him to realize out of the property, if the necessity arises, the moneys due to him.

Therefore, it will be at once apparent that, when an inquiry arises whether a given incident belongs to such an estate, we can apply for assistance only in a secondary way to the rules of the common law, for the initial step in such an investigation plainly must be a solution of the question whether the incident so claimed is one reasonably necessary to give to the mortgagee that security for his money that was intended.

Applying this test to the transaction in hand, it seems demonstrably certain that the contention of the plaintiff in error is unfounded. For why should the mortgagee be possessed of the power to separate the pledge from the debt? Assuredly such a transfer of the land thus divorced from the debt has no tendency even to aid him in securing or in collecting the moneys due to him. Its entire effect would be to impair his abilities in that respect. It would be applying the

estate to a purpose alien altogether from that which the mort-
gage was intended to subserve.   Such an alienation, there-
fore, while undoubtedly warranted by the rules of the com-
mon law, is wholly inconsistent with the system which, as has
been said, prevails in this state on this subject.

In this connection it is proper to remark that the conten-
tion that a mortgagee can convey the property in disconnec-
tion with the debt is, so far as is known, a novel one in this
state.   Such a doctrine would very materially alter the ancient
and present practice of searching the public records with
respect to the title to real estate.   Heretofore no person, in
making such an investigation, has deemed it requisite or ad-
visable to look for conveyances made by mortgagees.   No
clerk has ever certified as to them.   No lawyer, in all proba-
bility, in the management of a foreclosure, has ever thought
of the possibility of the existence of such a conveyance.   The
admission of such a right would plainly occasion much diffi-
culty and confusion in this important branch of legal practice.
It would clearly conflict with the spirit, if not the letter, of
the act regulating the recording of the assignments of mort-
gages.   *Rev., p.* 708, § 34.   The effect of that provision is to
enable mortgagors to obtain a cancellation of their mortgages,
by payment or release, without danger so far as unrecorded
assignments are concerned, and for that purpose it requires
all assignments of mortgages to be recorded in the appropriate
book in the public office.   If the defendant in error, there-
fore, had taken an assignment of the bond and mortgage in
the present case, it would have been incumbent on him, in
order to preserve to himself the right so acquired, to record in
this book the transaction, and it would be quite repugnant to
such an obligation to hold that, in case of his taking an
assignment of the mortgage without the bond, no such record
is necessary.

Nor is it thought that the result of this litigation would be
affected by the concession that the conveyance in question
was of perfect validity.   Let it be assumed, for the purpose
of the argument, that the defendant in error at this hour

stands invested with the title which he claims. What, then, would be the nature of his estate? There seems to be no possible doubt on this subject. When he acquired the title, payment of the debt due by the mortgagor to the mortgagee would have reinvested, without a reconveyance, the title in the former; the entire estate created by the mortgage would have been at an end. And a sale under foreclosure is equivalent, so far as its effect on the property is concerned, to a payment; the sale in such proceeding divests in its entirety all the beneficial interest that the mortgagee ever had in the land. After such a sale, the purchaser becoming possessed of the rights that the mortgagor, as owner, and the mortgagee, as pledgee, of the land had, would, upon the plainest principles in equity, be entitled to demand that the absolute estate in the premises should be surrendered to him by whomsoever the same might be held; and, therefore, under the circumstances now before us, if the technical title should be found to be resident in the defendant in error, by intendment of law he would be regarded as holding such title in trust for the person so beneficially entitled to it. Being a naked trust, it has long ago been conclusively settled that such legal title could not be set up, even in a court of law, against the *cestui que trust*, the plaintiff in error.

On all sides the case is clear of doubt.

Let the judgment be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, GARRISON, KNAPP, MAGIE, REED, VAN SYCKEL, BROWN, CLEMENT, SMITH, WHITAKER. 13.

*For reversal*—None.