Blue v. Everett.

Jacob L. Blue, appellant,

v.

John B. Everett et al., respondents.

[Filed February 28th, 1898.]

When the legal right of action upon a bond is barred by the statute of limitations, and the legal right of entry upon lands mortgaged to secure the bond is likewise barred, the holder of the bond and mortgage cannot maintain a bill in chancery to collect the debt by sale of the mortgaged premises unless he can show some pertinent equitable right beyond the ownership of the bond and mortgage.

On appeal from a decree advised by Vice-Chancellor Emery, whose opinion is reported in *Blue* v. *Everett, 10 Dick. Ch. Rep. 329.*

*Mr. Harry E. Richards,* for the appellant.

*Mr. Edward M. Colie,* for the respondents.

The opinion of the court was delivered by

Dixon, J.

The bill in this case was filed October 25th, 1894, to foreclose a mortgage dated June 19th, 1872, securing payment of a bond of the same date for the sum of $1,500, payable in one year from its date. The answer alleged that the mortgage debt had not in any way been recognized by the obligor or anyone claiming under him for over twenty years before the filing of the bill, and set up the bar of the statute of limitations. On the hearing the complainant endeavored to prove that interest had been paid on the bond on August 9th, 1875, but, in the opinion of the vice-chancellor, this effort was not successful, and the delay of over twenty years in filing the bill not being

satisfactorily explained, he advised the dismissal of the bill. From the decree accordingly made the complainant appeals.

Without considering the questions decided below, we think the decree should be affirmed on broader grounds.

By his bond the complainant acquired only a legal remedy. It gave him no standing whatever in a court of equity.

By his mortgage, according to the ancient common law of England, he acquired an immediate legal estate, defeasible by the payment of money in exact accordance with the condition of the bond.   On breach of the condition that law fixed the estate absolutely in the mortgagee, the mortgagor being a mere tenant at will.   This legal situation was deemed by the court of chancery unjust, and therefore that court established the rule that, at the instance of the mortgagor, it would compel the mortgagee to accept payment of the debt after the due-day, and on payment to reconvey the estate.   This was clearly equitable.   But the rule went further.   In case the mortgagee had entered into possession of the land, the court of chancery regarded him as a mere trustee, holding him to account for the rents and profits, and, as soon as his debt was thereby satisfied, requiring him to surrender possession and reconvey the title to the mortgagor. The equity of this branch of the rule is questionable, in that it imposed on the mortgagee duties which he had never intended to assume, and it practically precluded him from exercising his legal right to possession.   In order to alleviate its harshness, the court then permitted the mortgagee to come in and have the chancellor set another day instead of that named by the parties themselves, so that, in case the debt was not paid by that day, the legal estate conveyed to the mortgagee might become absolute.   Such a proceeding was properly called a foreclosure of the equity of redemption.   It contained, however, not much more of equity than did the doctrine of the common law, and soon a really equitable practice obtained, by which the mortgagee, instead of subjecting himself to the risk and inconvenience of a trusteeship, and instead of asserting his legal right to the land, as modified by the chancellor's discretion respecting the time when he might exercise it, brought his estate into the court of

chancery and asked that it should be sold free from the mortgagor's equity, and out of the proceeds his debt should be paid and the residue turned over to the mortgagor.

On reflection it will be observed that all of these equitable remedies naturally grow out of and depend upon the legal situation. Their primary aim was to relieve the mortgagor from the hardness of his own contract; their secondary aim, to relieve the mortgagee from the difficulties into which the court's attempt to do justice to the mortgagor had thrown him.

But, according to the doctrine firmly established in New Jersey, no such legal situation exists. Here the mortgage vests in the mortgagee no estate whatever in the land. It merely gives him a right of entry on breach of the condition mentioned in the instrument. *Sanderson* v. *Price, 1 Zab. 646, note a.* Until such entry the mortgagor continues to be the legal owner of the land for all purposes. *Montgomery* v. *Bruere, 1 South. 260; S. C., 2 South. 865; Wade* v. *Miller, 3 Vr. 296; Shields* v. *Lozear, 5 Vr. 496, 503; Kircher* v. *Schalk, 10 Vr. 335; Devlin* v. *Collier, 24 Vr. 422.* Under the sixteenth section of our statute of limitations, the mortgagee's right of entry would be barred unless exercised within twenty years next after the breach of the condition upon which it accrued, and that right being barred, the estate of the mortgagor would be freed from any imperfection created by the mortgage. At law, the bar of the statute could not be obviated by payments made on account of the debt, for the mortgagor does not hold the land under the mortgagee, and the payments could not be deemed rent or in any sense the price of possession, but would be referred solely to the personal obligation held by the mortgagee.

From these considerations it would seem that, when the mortgagee's right of entry upon the land was legally extinguished, the real basis for the jurisdiction of a court of equity had gone, for there would be no longer any legal right by the exercise of which an inequitable condition could arise, and both parties might justly be left to their legal remedies.

Such was the situation when the present bill was filed. Under the mortgage the complainant's right to enter upon the land

accrued on the due-day of the bond, June 19th, 1873, and, as nothing occurred to keep it alive, it expired by lapse of time on June 19th, 1893, fifteen months before the filing of the bill.

But there is another view to be taken of the matter.

In the contemplation of courts of equity, the mortgage is a mere incident of the debt, and can be used by the mortgagee only as a means for obtaining satisfaction thereof. So completely is the mortgagee's interest in the land annexed to the debt that, in equity, whatever transfers the debt transfers that interest (*Stevenson* v. *Black, Sax. 338; Morris Canal and Banking Co.* v. *Fisher, 1 Stock. 667, 700*), and an attempt to transfer the interest without the debt is futile, both at law and in equity (*Devlin* v. *Collier, 24 Vr. 422*). Because of this close union between the debt and the security, courts of equity have held that, so long as the debt remains, the right of the creditor to resort to the land for payment of the debt also continues, even though by the statute of limitations the legal right of entry is barred. This doctrine arises naturally out of the proposition that the mortgaged interest is only incidental to the debt, for while the principal exists its incidents should also be kept alive.

But this doctrine will not suffice to maintain the present suit.

As already stated, the bond vested in the obligee only legal rights to be enforced by legal remedies. Of itself it gives the complainant no standing in a court of equity. The debt is a mere legal entity, involving no obligation outside of its legal character, and having intrinsically no quality of which a court of equity can take cognizance. It would seem, therefore, that when, because of such a debt as the principal thing, a court of equity is called upon to give equitable effect to that which is only incidental thereto, the first inquiry should be, does the principal exist? is there any legal obligation? and when for any cause the answer is found to be negative, the court should refuse to act. In the present case the legal obligation had expired, by the lapse of sixteen years since the last payment on the bond (*Gen. Stat. p. 1975 § 6*), and with the principal the incident also naturally perished.

But notwithstanding the logical coherence of these proposi-

tions, the court of chancery in this state (in accord with some tribunals elsewhere) has, with respect to debts secured by real estate mortgages, generally ignored the statute of limitations and the usual equitable rule that, in dealing with legal rights, courts of equity will follow the law, and has held that, unless actual payment of the debt be shown, it would apply presumptions of its own, when there had been long delay in taking steps to collect the debt. Had these presumptions been clearly established and long maintained, that might of itself be sufficient reason for declining to disturb them; but an examination of the cases will show that they are not even yet well defined. Thus, in *Executors of Wanmaker* v. *Van Buskirk, Sax. 685,* Chancellor Vroom said that it had not been clearly settled what length of time would be sufficient to give rise to any presumption against a bond and mortgage, but he expressed himself as willing to adopt a rule that a lapse of twenty years, without payment or *demand* of principal or interest, would raise a presumption, subject to be rebutted by circumstances which showed the conduct of the creditor to be a reasonable indulgence to the debtor. In *Evans* v. *Hoffman, 1 Halst. Ch. 354,* the insolvency of the debtor was thought not sufficient to rebut the presumption, and in *Magee* v. *Bradley, 9 Dick. Ch. Rep. 326,* the close relationship of the parties was held inadequate. In *Murphy* v. *Coates, 6 Stew. Eq. 424,* the fact that the creditor was the employer of the debtor was mentioned as significant, although the controlling fact was a written acknowledgment of the debt, with full proof that it had not been paid. In *Moore* v. *Clark, 13 Stew. Eq. 152,* and in *Miller* v. *Teeter, 8 Dick. Ch. Rep. 262,* a mere acknowledgment of the debt as a subsisting lien was held sufficient to rebut the presumption. In *Rockhill* v. *Rockhill, 14 Atl. Rep. 760,* the presumption was repelled by an arrangement which seems strongly suggestive of a purpose to defraud creditors.

These are, I think, all the reported cases in New Jersey where the court of chancery has sustained a bill for the collection of a debt by foreclosure of a mortgage, after the legal remedy on both the debt and the mortgage had been barred by the statute, and when no independent equity appeared. In *Barned* v. *Barned,*

*6 C. E. Gr. 245*, the legal right of entry under the mortgage still subsisted when the bill was filed, and in *Stimis* v. *Stimis, 9 Dick. Ch. Rep. 17*, the fact that very soon after giving the bond and mortgage the mortgagor had come into possession of the instruments as executor of the mortgagee, gave rise to new duties.

. In the present case, on a very careful examination of these decisions and others elsewhere, the learned vice-chancellor reached the conclusion that, under the equity rule, proof in fact of the non-payment of the debt would not defeat the presumption, but the creditor must go further and show that, admitting the continued existence of the debt, his conduct in refraining from collecting it has been reasonable.

Certainly such a rule has but scant justice and a minimum of precision to recommend it. It inflicts upon a creditor a penalty extending to the whole amount due him, however large, and no more, however small, because, on consideration of the provable circumstances, the chancellor thinks his conduct was either too indulgent towards his debtor or too considerate of his own convenience. It also lets in the evils so strongly denounced by Mr. Justice Ford in *Ludlow* v. *Camp, 2 Halst. 113, 118*.

On the other hand, there are many cases in equity supporting the declaration of Mr. Justice Carpenter, speaking for this court in *Conover* v. *Wright, 2 Halst. Ch. 612:* "Whether courts of equity act in obedience or in mere analogy to the statutes of limitations, it has become a settled rule that they will apply them, in similar cases within the sphere of their jurisdiction, equally with courts of law. They have always felt themselves bound by the spirit and meaning of these statutes, and ordinarily act in conformity to them. In cases concurrent with a remedy at law, they always allow them to be pleaded, and a party is not permitted to evade their effect by resorting to another forum." Similarly, Chancellor Vroom, in *Executors of Wanmaker* v. *Van Buskirk, Sax. 691*, said : "The statute of limitations does not apply in terms to courts of equity, but it is well known that they have always felt themselves bound by the principles of the statute, and, except in cases of strict trust and matters purely

Blue *v.* Everett.

equitable in their nature, have acted in conformity with them." See, also, *Executors of Conover* v. *Conover, Sax. 403, 410; Marsh's Executors* v. *Oliver's Executors, 1 McCart. 259; Cowart* v. *Perrine, 3 C. E. Gr. 454, 457; Carlisle* v. *Cooper, 4 C. E. Gr. 256; Ruckman* v. *Decker, 8 C. E. Gr. 283; Arnett* v. *Finney, 14 Stew. Eq. 147; Smith's Administrators* v. *Wood, 15 Stew. Eq. 563; S. C. on appeal, 17 Stew. Eq. 603; Agens* v. *Agens, 5 Dick. Ch. Rep. 566; Alling* v. *Alling, 7 Dick. Ch. Rep. 92.*

The principle thus supported should be applied to the case in hand. The claim of the complainant is not, in its nature, equitable at all. It is brought into the court of chancery, not to enforce any equity belonging to him, but that the court may dispose of the equity of the defendant. The complainant's rights, under both his bond and his mortgage, are purely legal in their nature, and as they have been barred, that under the bond by the lapse of sixteen years since the last payment was made and that under the mortgage by the lapse of twenty years since the breach of the condition, they should be denied in equity as well as at law.

For these reasons the decree below should be affirmed.

*For affirmance*—Collins, Depue, Dixon, Garrison, Gummere, Lippincott, Ludlow, Van Syckel, Adams, Bogert, Hendrickson, Krueger, Nixon, Vredenburgh—14.

*For reversal*—None.