THOMAS FARMER et al.

*v.*

MARGARET WARD.

[Decided October 31st, 1908.]

1. Under the Martin· act (*3 Gen. Stat. 1895 p. 3370*), providing for the sale of land for taxes, a mortgagee may not purchase so as to cut off the equity of redemption ·by notice.

2. A mortgagee prior to sale may pay the taxes on the mortgaged property and thereby acquire a lien by subrogation, which in respect to priority, occupies the same position as the tax lien.

3. If a mortgagee does not pay taxes before sale, he may redeem by the Martin act (*3 Gen. Stat. 1895 p. 3370*) after sale.

4. After sale of land for taxes, and before redemption, a mortgagee's interest is practically transferred to the fund, and he is entitled to any excess paid by the purchaser over the tax lien to be applied on the mortgage. debt.

5. If, in order to redeem from a tax sale, a mortgagee is required· to pay liens which the purchaser has paid in addition to the tax lien for which the sale has been held, the Martin act (*3 Gen. Stat. 1895 p. 3370*) gives to the mortgagee a lien for the total amount so paid, which he may enforce, either in a suit to foreclose the mortgage or in a separate suit.

6. The owner of mortgaged land may not acquire a tax title adverse to the mortgage.

7. Where a mortgagee without authority purchased the property at a tax sale, she occupied the same position as if she had paid the taxes before sale, and was therefore only entitled to subrogation to the tax lien.

8. Where a mortgagee purchased the property at a tax sale, and thereby acquired a mere lien on the property for taxes, she could thereafter sell the property on foreclosure of the mortgage. subject to the tax lien, without affecting her right to hold such lien as against the purchaser on foreclosure.

9. Under the maxim that he who seeks equity must do equity, a purchaser of land on mortgage foreclosure, charged with a tax lien, held by the mortgagee. as a prior encumbrance, could not maintain a suit to vacate the tax lien without paying the amount represented by the tax certificate, with interest.

10. Where both parties to a suit in equity prayed for relief as against the other, which was inequitable, and the decree did not conform to either prayer, costs would not be allowed to either.

11. Where a case for the vacation of a tax certificate was argued on the assumption that the bill had been amended so as to allege the procurement of a tax deed after the bill was filed, the amendment must be actually made before decree.

Final hearing on bill, answer, replication and agreed state of the case.

*Mr. John J. Mulvaney,* for the complainants.

*Mr. Clarence Linn,* for the defendant.

STEVENSON, V. C.

My conclusions in the above-stated cause may be briefly stated as follows:

1. I think that the Martin act impliedly excludes the mortgagee from becoming a purchaser so as to be able to cut off the equity of redemption by notice. Under what I think is a well-settled rule, the mortgagee prior to sale may pay the taxes which the owner of the equity of redemption was primarily liable to pay, and thereby acquire by a species of subrogation a lien for the amount so paid, which, in respect of priority, occupies the same position as the tax lien. *Manning* v. *Tuthill, 30 N. J. Eq. (3 Stew.) 29; Fiacre* v. *Chapman, 32 N. J. Eq. (5 Stew.) 463; Schatt* v. *Grosch, 31 N. J. Eq. (4 Stew.) 199; Sidenberg* v. *Ely, 90 N. Y. 257.* If the mortgagee does not see fit to pay the taxes before the sale is held, the statute protects him by giving him a most ample right of redemption. After sale and before redemption the mortgagee's interest stands practically transferred to the fund, and he is permitted to come into court and have any excess paid by the purchaser over and above the tax lien applied to the satisfaction of his mortgage debt. If, in order to redeem, the mortgagee is obliged to pay liens which the purchaser has paid in addition to the tax lien, for which the sale was held, the statute gives the mortgagee a lien for the total amount, which he has thus paid in effecting redemption. The statute further expressly

gives the mortgagee a remedy for the enforcement of his lien—the lien which he has acquired by subrogation—either in a suit to foreclose his mortgage or in a separate suit.

If all the provisions of this statute are read together, I think it is quite plain that the intention is that the mortgagee shall stand with the owner, and that the rights which he can enjoy under the statute after a sale held in pursuance of the statute, are those which are expressly provided or recognized. The statute does not, in terms, prevent the owner from acquiring a tax title which will cut off the mortgage, and yet such a prohibition, it is conceded, actually exists. Of course, the main reason for this rule arises from the fact that the owner ordinarily is primarily liable for the taxes, and as between himself and the mortgagee ought to pay them. In determining whether the mortgagee is to be deemed excluded from the class of possible purchasers, we have presented, I think, merely a question of statutory construction; we must ascertain what the statute means. I perceive very strong indications that the procedure under the Martin act for the acquisition of tax titles was not provided for the use of either owner or mortgagee. This construction of the statute is supported, I think, by the policy of the law which is to induce all parties interested in real estate to see that the taxes are paid. Mortgagees oftentimes are practically owners, and always may be regarded as part owners of the thing which is taxed—of the thing in respect of which the state demands its money. Mortgagees should be encouraged to influence the owners of the equity to keep their taxes paid, and when that is not done, to come forward and pay the taxes themselves for the protection of what is their own property. It would tend to the accumulation of arrears of taxes if mortgagees could stand by indifferently until a tax sale should be held at which they could acquire a valid tax title which, in many cases, would save the expense of a foreclosure suit.

The above are some of the considerations which point to the conclusion that it is not the intention of the Martin act that a mortgagee who may get the benefit of the rights and remedies provided by the act for mortgagees shall be a purchaser so as to be able to acquire an absolute title by notice.

Perhaps the whole matter may be summed up in the state-
ment that the Martin act expressly provides for the protection
of the mortgagee upon the theory that his estate is sold, and that
he cannot be a buyer at what is his own sale. There might be
good reasons for permitting the mortgagee to buy at the tax sale,
and thereby merge the mortgage title subject to a restoration of
the original status upon redemption by the owner, if the mort-
gagee were not otherwise fully protected by express provisions of
the statute. Both owner and mortgagee are sold out; the pur-
chaser takes their estates. Both owner and mortgagee are allowed
a wide privilege of redemption, and the mortgagee is vested with
a most important and protective right of subrogation in respect
of the payment of taxes. Both owner and mortgagee may, I
think, very properly be considered as confined to these ample
remedies of redemption and subrogation. These remedies greatly
modify the title which any purchaser can take through the tax
sale. The statute thus seems to define the rights of two classes,
and the rights created for each class are in derogation of the
rights created for the other class. The purchaser in time may
acquire absolutely the estate of both owner and mortgagee. On
the other hand, both owner and mortgagee have a right to re-
deem which can only be extinguished after notice has been served
upon them, and a period of time has elapsed during which they
may save their estates. Last of all, the equities between the
owner and the mortgagee, in case the mortgagee redeems, are
protected and enforced by the most ample right of subrogation
which is given to the mortgagee against the mortgagor. The
whole situation, to my mind, impliedly excludes the mortgagee
from claiming at his option to exercise the statutory rights of
redemption and subrogation accorded to him as mortgagee, or
what may be called the antagonistic rights which the purchaser
acquires as against both owner and mortgagee.

2. It does not follow that the defendant must lose the amount
of the tax lien which she paid to the tax collector in the form
of a bid for the property. I think she stands in the same posi-
tion as if instead of bidding the amount of the tax lien at the
sale she had paid the same amount in discharge of the tax lien
before the sale was held. If the Martin act does not contemplate

that a mortgagee who is specially cared for by the act shall be a purchaser at the tax sale, it follows that when a mortgagee assumes to do this thing what in fact he does is to pay off the tax lien and acquire the same by subrogation. No practical difficulty will be encountered in dealing with the situation on this theory in case the mortgagee should pay more than the amount of the tax lien.

I think that the defendant occupies substantially the same position as the holder of two mortgages who forecloses the second and sells subject to the first. The claim on behalf of the complainant that the defendant lost her lien for the taxes seems to me to be without any equitable basis. There is no proof that the complainants at the foreclosure sale did not have full notice of all the tax liens, which at that time encumbered the property. The taxes which the defendant paid were a matter of public record. Neither the complainants nor any possible purchasers were misled by any conduct of the defendant. The defendant was openly undertaking to foreclose her mortgage while she still held her tax title, or tax claim, for what it might be worth, and all parties interested must be presumed to have understood the exact situation. It may be that the defendant after foreclosing her mortgage and neglecting to bring in her tax lien or claim, would not be allowed costs in a subsequent suit for the enforcement of that lien. I do not see how the complainants have been subjected to any disadvantage, because the tax lien was kept out of the foreclosure suit if they are protected against unnecessary costs of suit.

In the case of *Manning* v. *Tuthill, supra,* Chancellor Runyon most positively upheld the right of the mortgagee who has paid the tax to a lien by subrogation. In that case, however, the mortgagee paid the tax and thereby apparently canceled the tax lien and the land was then sold apparently free and clear of taxes. Subsequently the mortgagee endeavored to compel this purchaser to reimburse him the amount of the tax so paid. This claim was not sustained. The mortgagee had already failed to recover against the purchaser in an action at law based on an alleged promise of the purchaser to repay the amount of the tax.

The case is widely different from the present one in a most important particular. The mortgagee having allowed the land to be sold to a purchaser apparently free from the tax lien, undertook in a subsequent suit to have the canceled lien reinstated for his benefit. He asked to be subrogated to the original holder of the lien when he himself had canceled the lien and caused the land to be sold apparently free from it.

Under the evidence in the present case, as we have seen, the complainants are charged with having made their bid and bought the property with full notice that the defendant was holding the tax certificate, having never intended to pay the tax or cancel the tax lien, and that such lien was outstanding in full force, as undoubtedly appeared from the public records.

If, however, any course of reasoning leads to the result that the defendant has lost her lien, it must be borne in mind that the defendant is not coming into court and asking to have such lien enforced. On the other hand, complainants are standing in a court of equity and asking that court to aid them against this defendant. They are seeking equity and they must do equity. This property was primarily bound to pay the tax which the defendant paid, and the defendant had the right to pay this tax and collect it at the same time when she collected the amount of her mortgage. The land was offered to the public for sale in the foreclosure suit charged with the amount of the taxes paid by the defendant as a prior encumbrance. No court of equity in my judgment would give to the complainants the relief which they ask for against the defendant which involves compelling the defendant to surrender her tax title excepting upon condition that complainants pay the defendant the amount represented by the tax certificate with interest.

3. No costs should be allowed to either party in this case, as each party has been in part successful. The complainants have sought to strip the defendant of her tax title or tax lien without paying her anything for it; the defendant, on the other hand, has sought to have the complainants' bill dismissed and her title under her tax deed adjudged absolute. In my judgment, each party has contended for what is inequitable and therefore neither should have costs.

4. Counsel will bear in mind that this case has been argued upon the assumption that the bill of complaint has been amended so as to set up the procurement of the tax deed after the bill was filed. The amendment is by way of supplement under the rules. This amendment, however, must be made before the decree is advised.