The bill in this cause is filed to foreclose a mortgage made by Willat Studios and Laboratories, Inc., to complainant, as trustee, to secure an issue of bonds amounting to $100,000, all of which are outstanding, due and unpaid, together with interest at six per cent. from October 1st, 1924.
The defendant Willat Film Corporation is the present owner of the mortgaged premises, which are located in the borough of Fort Lee, by virtue of a conveyance from the mortgagor dated November 23d 1923.
The complainant Central Union Trust Company, trustee, is the holder of a $300,000 mortgage dated December 1st, 1923, and recorded in the Bergen county clerk's office on December 15th, 1923.
The defendant Mark M. Dittenfass is the holder by assignment of a certificate of tax sale, and a mortgage for $15,000 affecting the mortgaged premises, dated December 1st, 1923, but recorded after the $300,000 mortgage referred to in the preceding paragraph. *Page 750 
The defendants Evans Laboratories, Inc., and National Evans Motion Film Laboratories, Inc., are, respectively, the lessee and assignee of the lessee of the mortgaged premises.
Originally a number of insurance companies were made parties defendant in this cause because of a controversy respecting the application of certain insurance moneys, but the bill was dismissed as to them by consent of counsel and that controversy was transferred by the parties themselves to the New York courts. There is no dispute as to the amount due on the mortgage which is the subject of this foreclosure. The only issue here is as to the priorities between the complainant's mortgage for $100,000 and the $300,000 mortgage on the one hand, and the tax lien and mortgage of the defendant Dittenfass on the other. The facts pertinent to this inquiry are as follows:
On June 25, 1923, the collector of taxes of the borough of Fort Lee sold the mortgaged premises at tax sale to the borough for delinquent taxes for 1921, amounting to $8,269.07, and executed and delivered to the borough a certificate of tax sale which was duly recorded in the Bergen county clerk's office on June 28th, 1923. At this time taxes for 1922 and a portion of 1923 were also delinquent. The mortgagor company, which was still the owner of the mortgaged premises, was apparently in financial difficulties, and in November, 1923, a representative of that company applied to the borough for an adjustment of the delinquent taxes and outlined a plan of reorganization of the company whereby the defendant Willat Film Company was to take title to the mortgaged premises and also to create a bond issue of $300,000 to be secured by a first mortgage on its property. At this time delinquent taxes against the mortgaged premises amounted to approximately $27,000. After some negotiations an agreement was made between the borough official and the mortgagor whereby the Willat company paid the borough $9,749.26 in cash and gave the borough five promissory notes of $3,000 each, one of which was payable each year for five years, beginning December 1st, 1924, and further *Page 751 
executed and delivered to the borough a mortgage for $15,000 covering the same premises, as security for the payment of these notes, said mortgage being payable in installments as the notes matured. The borough agreed to subrogate this $15,000 mortgage to the $300,000 mortgage above referred to "so as to make the $15,000 mortgage a second lien or encumbrance upon the premises." There was no written memorandum of the agreement between the company and the borough except the minutes of borough council. In the resolution of that body reciting the proposition of adjustment nothing was said respecting the surrender or cancellation of the tax certificate or waiver or surrender of the lien of that certificate or other tax lien; but at the same meeting of council, at which this resolution was adopted, another resolution was also adopted by which the tax collector was authorized to cancel the certificate of tax sale when taxes for 1921, 1922 and 1923 "be paid on terms set forth in resolution adopted at this meeting." Upon the receipt of the notes and mortgage, tax receipts for 1922 and 1923 taxes were delivered to the new company by the collector. These receipts were marked by the collector, "paid by check and notes." The certificate of tax sale was never canceled, but was retained by the borough until later assigned to the defendant Dittenfass, as hereinafter mentioned; nor was the arrangement respecting the adjustment of taxes ever fully carried out by the Willat companies, as will hereinafter appear. The notes received from the Willat company were discounted at a local bank and the note due December 1st, 1924, was dishonored on maturity and protested for non-payment. On December 17th, 1924, the borough agreed with the defendant Dittenfass to assign the certificate of tax sale and the $15,000 mortgage to him upon payment by him of the amount due the borough from the Willat companies for delinquent taxes, and Dittenfass deposited $4,000 with the borough under the terms of that agreement, which deposit was to be returned to him in the event of payment of said taxes by the Willat companies prior to the date fixed for settlement. Pursuant to this agreement, *Page 752 
on April 15th, 1925, Dittenfass paid to the borough $23,316.30 and the certificate of tax sale and the mortgage for $15,000 were duly assigned to him by the borough and the assignments duly recorded. Taxes for 1924 were also paid by Dittenfass. Prior to this assignment, and on February 4th, 1925, borough council had, by resolution reciting the default of the Willat company in the payment of notes and taxes, declared the agreement of November 21st, 1923, void. The bill of complaint alleges that the new company, on December 1st, 1923, executed to complainant, as trustee, a $300,000 mortgage to secure a bond issue of that amount, and that bonds of the face value of $19,000 were issued and outstanding under that mortgage. No proof whatever was offered with respect to this allegation, nor was it admitted by any of the answering defendants. The trustee under that mortgage, also a defendant here, has, however, filed a notice, asking that its encumbrance be reported upon. It is probable that this was the $300,000 mortgage referred to in the resolution authorizing the adjustment of taxes, but in the absence of proof it will be disregarded. It is clear, however, that the $300,000 mortgage referred to in the bill of complaint is not a first mortgage as contemplated by the adjustment resolution of November 21st, 1923.
The complainant contends that by accepting partial payment of delinquent taxes in cash, notes and mortgage pursuant to the arrangement of adjustment evidenced by the resolution of borough council in November, 1923, the borough waived its tax lien and substituted therefor the lien of the $15,000 mortgage, which, by agreement, was to be postponed to the $300,000 first mortgage above referred to, and that, therefore, whatever claim the defendant Dittenfass has is subsequent and subject to the claim of the complainant, both on the $100,000 mortgage, which is here the subject of foreclosure, and on the $300,000 mortgage to the extent of the bonds issued and outstanding thereunder. I have already noted the failure of proof on the $300,000 mortgage. It is also contended by complainant that the cash payment of $9,749.26, made by the Willat company, should, *Page 753 
at all events, be applied to the payment of the amount due on the certificate of tax sale. On the other hand, the defendant Dittenfass claims that the borough never waived or released, and never intended to waive or release, its tax lien, and that when he purchased the certificate of tax sale and the mortgage from the borough he succeeded to all of the borough's rights, including the right to priority of lien. The complainant concedes that Dittenfass succeeded to all the borough's rights, but insists that the priority of lien was gone at the time Dittenfass took the assignment of the certificate of tax sale and mortgage, and that it was a part of the borough's agreement with the Willat company that the certificate of tax sale was to be delivered up and canceled, and asks that this court now direct the surrender and cancellation of that certificate, and that the defendant be confined to his $15,000 mortgage, and that alone, for his security. The sole question to be determined, therefore, is whether or not, when the borough accepted the notes and mortgage pursuant to the agreement of adjustment, it agreed to waive, and did waive, its tax lien.
I have very carefully considered all of the testimony and other evidence submitted, and am thoroughly convinced that there was never any waiver of the tax lien by the borough, and that there was never any agreement or intention on the part of the borough officials to waive that lien. This thought is emphasized by the resolution of council of November 21st, 1923, which directed the collector to cancel the tax certificate when the taxes for 1921, 1922 and 1923 were paid according to the terms of the resolution authorizing the adjustment. Complainant contends that this was a positive direction of council to the collector to cancel upon receipt of the notes and mortgage, but, in my judgment, it was not. It was only a conditional direction. The taxes were to be paid in installments as and when the notes were paid. If the notes were not paid then the taxes were still alive, and that the bills were marked by the collector "paid by check and notes" is further evidence that payment was not to be considered as complete until the checks and notes were paid. *Page 754 
The receipts were no receipts unless the checks and notes were honored. They were conditional only. It is elementary that the acceptance of a note for an antecedent debt does not cancel that debt in the absence of an agreement to that effect unless the note itself is paid. A familiar example of this principle often arises in mechanics' lien suits where notes are given for materials, but are dishonored before the time for the filing of the lien has expired. The creditor in such case is uniformly, in the absence of an agreement to the contrary, held not to have waived his right of lien. Dey v. Anderson, 39 N.J. Law 199;Haney-White Co. v. Stafford, 96 N.J. Law 283.
The same principle was involved in Ledos v. Kupfrian,28 N.J. Eq. 161, where a vendor's lien was held not to have been waived by the taking of a mortgage in ignorance of a prior existing mortgage. See, also, Shoemaker v. Maloney, 4 N.J.Adv. R. 667.
The fact that the borough retained the certificate of tax sale uncanceled, and that this retention was, apparently, acquiesced in by the Willat companies (there being no evidence of any demand by either of those companies for the surrender or cancellation of the certificate), is strong evidence of the absence of any such agreement as is contended for by the complainant; and it is significant that there is now no contention on behalf of the Willat companies that there was any agreement with the borough for the surrender or cancellation of the tax certificate or for the waiver of the tax lien; nor is there any testimony offered by anyone indicating such an agreement. The court is asked to infer this alleged agreement from the various resolutions of council and from the exhibits and other evidence. It is, perhaps, pertinent to inquire why, if it was a part of the agreement between the borough and the Willat companies that the tax lien should be waived and the certificate of tax sale surrendered and canceled, there was no reference to that fact in the adjustment resolution of November 21st, 1923, and why authorization to the collector to cancel the certificate was the subject of a separate and distinct resolution at the same meeting. If *Page 755 
the decision in this cause is to be reached by inference, an inference that there was no such agrement as contended for, is, perhaps, the more justifiable; but I do not feel called upon to rest my decision on inference. The burden of proof here is on the complainant. Under the Tax act the taxes represented by the tax sale certificate and subsequent taxes are, by express words, made a first and prior lien on the property against which levied.P.L. 1918 p. 884 ch. 237 § 9; 2 Cum. Supp. to Comp. Stat. p.3527. That section reads, in part, as follows:
"Each and every municipal lien shall be and remain a first lien on such land and paramount to all prior or subsequent alienations and descents of said lands or encumbrances thereon, except subsequent municipal liens."
Also, by virtue of section 36 of the Tax Sale Revision (P.L.1918 ch. 237 p. 892; 2 Cum. Supp. to Comp. Stat. p. 3534), the certificate of tax sale is presumptive evidence in all courts of the facts therein recited and of the title of the purchaser to the land therein described, and after two years such certificate is conclusive evidence, except where the holder thereof obtains the same by fraud or had knowledge of fraud in connection therewith; but in the instant case there is not even a charge of fraud in the bill. Nor is there any evidence from which fraud could be found. So far as appears from the evidence the defendant Dittenfass was an entire stranger to the Willat companies, and had no knowledge whatever of the transactions between those companies and the municipality nor of their terms. He might very well claim protection as a bona fide purchaser for value without notice. It seems to me that the whole of complainant's case with respect to this issue of priority is based upon suggestion and inference, but, as already intimated, the priority of the tax lien cannot be removed by inference. Municipal rights are not abrogated by inference. Nothing short of clear and convincing proof of waiver or agreement of waiver will warrant this court in pronouncing as non-existent a lien which the legislature has so plainly and expressly said *Page 756 
the municipality shall have. With respect to the contention that the cash payment made by the Willat company on December 1st, 1923, should be applied to the payment of the amount due on the certificate of tax sale, and that the certificate be surrendered and canceled because of such payment, the answer is that the amount then due on the certificate of tax sale was not only the amount due for 1921 taxes, because of which the sale was had, but was the amount mentioned in the certificate, plus interest and costs and plus subsequent taxes and interest, which, according to the evidence submitted, amounted at that time to, approximately, $27,000. There appears to have been no agreement between the parties as to the application of this cash payment. It was, therefore, optional with the borough to apply it as it saw fit. It might have been applied by the borough to the payment of taxes for some particular year, or it might have been applied generally, and from all that appears in this case it was applied generally. The complainant suffered no injury by this payment being made by the mortgagor. Rather was the complainant benefited to the extent of the cash payment, as otherwise the complainant would have had to pay it in order to protect its mortgage. There was, therefore, no obligation on the part of the borough to surrender and cancel the certificate of tax sale by reason of the cash payment. In the brief submitted on behalf of the complainant it is contended that, in effecting the adjustment of taxes, as evidenced by the resolution of council of November 21st, 1923, the borough "made an election to rely upon the security afforded by the mortgage rather than upon the statutory tax lien." I am of the opinion that there was no election. See Shoemaker v.Maloney, supra. Counsel for complainant concedes that election is a question of intention. I have already indicated my conclusion as to the intention of the parties as evidenced by their acts. It will also be noted that in the aspect for which the complainant contends the borough would have postponed its tax lien and mortgage to a first mortgage of $100,000 and a second mortgage of $300,000, thereby constituting the tax lien and mortgage a *Page 757 
third lien, whereas the agreement as evidenced by the resolution of November 21st, 1923, was that the $15,000 mortgage alone was to be subrogated to the $300,000 mortgage, so as to constitute the $15,000 mortgage a second lien. There was never any agreement to make it a third lien, notwithstanding that the aggregate amount due on the two prior mortgages might now be less than the $300,000 mortgage in contemplation, nor was there any agreement to postpone the tax lien. Complaint is also made that the assignment by the borough to Dittenfass was made without notice to complainant or without notice to Willat companies. I know of no legal requirement for such notice, and neither the complainant's nor the mortgagor's rights of redemption were in any way abridged by this assignment. Complainant further contends that if the priority of the tax lien is not abrogated, and that lien postponed to its mortgage and also to the $300,000 mortgage, then the mortgagor will have had nothing in return for its cash payment of $9,749.26 made on December 1st, 1923, and argues that this is an indication that there must have been an agreement between the parties for the waiver of the tax lien. But the argument is based upon a false premise. The mortgagor obtained a number of advantages as a result of this payment, among which may be mentioned the privilege of paying the balance of the delinquent taxes in installments extending over a period of five years; the interest rate on the delinquent taxes was thereby reduced from eight per cent. to six per cent.; the right to the possession of the property against which the taxes were levied was reserved to the mortgagor, and, incidentally, the right to the rents, issues and profits. Without this agreement the borough would have had the right to immediate possession by virtue of its tax sale certificate, including the right to the rents and profits.
But what the complainant is really asking here is, in effect, that the borough be forced to specifically perform an agreement in accordance with the complainant's conception of its terms, although the complainant was not a party to that agreement, without requiring complete performance by the *Page 758 
other contracting party whose "complete" failure has already been noted. It is conceded in complainant's brief that the authorities make it perfectly clear that unless it is satisfactorily shown that a lienholder intended by the acceptance of other security to give up the lien of the first security, the first lien is retained in full vigor. That, to my mind, expresses the theory of this case in a nut shell. I can find no evidence from which the court would be justified in finding the intention on the part of the borough of Fort Lee to surrender its tax lien, but, on the other hand, the evidence thoroughly convinces me that there never was any such intention of waiver or surrender, and that no such waiver or surrender was made; and that, therefore, the original tax lien remains in full force and vigor, and that the defendant Dittenfass is entitled to priority on his claim to the extent of the moneys paid by him to the borough, with interest, over the complainant's mortgage. I will advise a decree in accordance with these conclusions.