This suit is brought under the "Tax Sale Law" (R.S. 54:5-1,c.), to foreclose a tax lien on premises designated on the tax duplicate of the Township of Burlington, Burlington County, as "house and lot, Lot 5, Block 5, Edgewater Park." The defendant Binney W. Earl became seized of a life estate in the premises under the will of his mother, Marie Binney Earl, who died November 22d 1929. The will, admitted to probate February 10th, 1930, provided, among other things:
"Sixth. All my oil paintings, engravings, family miniatures, silver and books of all kinds, and all the rest, residue and remainder of my property, real, personal and mixed, and wheresoever situate, I give, bequeath and devise to my dear son, Binney W. Earl, during the term of his natural life: immediately upon the decease of my said son, I give, devise and bequeath all the above-mentioned property to such child or children of my said son as may be living at the time of my death — if one, all the above-mentioned property; if more than one, all the above-mentioned property in equal shares, share and share alike. If no child or children of my said son should be living at the time of his decease, then I give, devise and bequeath all the above-mentioned property to my great-nephew, Alexander Kingsland, son of my late beloved nephew, Captain Albert Alexander Kingsland, and to my niece, Anna Beccadelli di Bologna, Princess di Castelcicala, or her children, if she does not survive me, in the proportion of two-thirds to the above-named nephew and one-third to said niece. The nephew's portion to be held by my sister, Florence Beccadelli di Bologna, Princess di Camporeale, if she be still living, until he reaches the age of twenty-one years. In case he does not attain that age, his portions go to my niece, Princess di Castelcicala."
Immediately upon probate of the will Binney W. Earl took possession. As life tenant, he was obligated to pay the taxes; he failed to do so and the collector of taxes sold the *Page 574 
premises to the township. The amount of the sale including interest and costs, was $504.77. In due course, a certificate of tax sale was issued and recorded as a mortgage in the office of the clerk of Burlington County. Two years passed and, the life tenant having failed to redeem, the certificate was sold and assigned by the township to William H. Carey, as agent or "trustee" for the complainants herein. He purchased the certificate for the sum of $1,970.43, the amount of the original tax sale plus taxes for the years 1933, 1934 and 1935, with interest and penalties. The assignment was recorded, and the assignee served on the life tenant a notice stating the amount paid, that he had six months within which to redeem, and that in case of default his right to redeem would be barred. Binney W. Earl failed to redeem pursuant to this notice, and the assignee of the certificate annexed thereto the notices, affidavits and official tax search which the statute required and had them recorded. Then, on November 25th, 1936, the agent conveyed the premises and all his interest therein to Florence Beccadelli di Bologna, Princess di Camporeale, as trustee for the other complainants.
Just prior to filing the bill of complaint in this cause, complainants were informed that, on a petition filed by the defendant May Belle Earl, wife of the defendant Binney W. Earl, such proceedings were had that on April 6th, 1937, he was adjudged to be a lunatic and by reason thereof incapable of governing himself, his lands and tenements, goods and chattels. The adjudication also found that he had been in a state of lunacy for two years next preceding the date thereof. These proceedings having been filed in the office of the clerk of the Orphans Court of Burlington County, the defendant Burlington County Trust Company was appointed guardian of Mr. Earl. It duly qualified and is acting as such guardian.
Because of this adjudication, it was immediately contended on behalf of Mr. Earl and his guardian that proceedings to bar the right of redemption, by notice, under the provisions of R.S.54:5-84, were ineffective. Faced with this claim, complainants instituted these proceedings, as authorized by R.S. 54:5-86. *Page 575 
The sole defense here interposed on the merits of the case, is that complainants as remaindermen under the will of Mrs. Earl, could not bar the right of the life tenant or of his judgment creditor to redeem his life estate from the tax sale. First, it is contended that Binney W. Earl having been declared to have been a lunatic over a period of two years preceding the date of the adjudication, proceedings to bar his right of redemption by notice could not be effective. Next, defendants argue that, between the defendant life tenant and the complainants there is privity in estate and a relationship of confidence which precludes complainants from barring the life tenant's right of redemption, through foreclosure of a tax sale certificate. Lastly, it is urged that the Tax Sale Law does not permit a remainderman to purchase a tax title and, by foreclosure, to bar the right of redemption of a life tenant.
Defendants, in their briefs, have suggested other defenses. These will be discussed and disposed of before taking up the defense which goes to the merits of the case. The guardian of the incompetent paid the taxes assessed against the property in question for the years 1937, 1938 and 1939. Defendants argue that this constitutes a bar to the granting of relief to complainants because, as they claim, the Tax Sale Law contemplates payment of taxes by the holder of the tax sale certificate. The statute,R.S. 54:5-99, does not require that subsequent taxes should be paid by the holder of the tax title. It simply requires that when the complainant is not a municipality no decree shall be entered "unless evidence is produced in the foreclosure suit that all subsequent municipal liens have been paid to the time of the commencement of the suit." This provision is intended to benefit the municipality, and to aid it in securing payment of its liens. It is essential that the liens be paid; it is immaterial who pays them.
The fallacy of the argument that subsequent taxes must be paid only by the holder of the tax title is apparent from the statutory requirements with respect to redemption. R.S. 54:5-60
requires that the amount to be paid for redemption "shall include all sums for subsequent municipal liens, and interest and costs thereon, actually paid by the holder of the *Page 576 
tax title or his predecessor therein, together with interest on the amount so paid at the rate chargeable by the municipality, * * *." Had these taxes been paid by complainants, they would have been entitled, under the provisions of R.S. 54:5-60, to recover the amounts so paid with interest. Not having paid them, complainants have made no claim for repayment, and the amount collectable on redemption is that much less. The payments made by the guardian were in discharge of an obligation of the life tenant. If by payment of taxes for one or two, or three years, the life tenant could prevent the holder of a tax title from enforcing it, then by repeating such payments at intervals, he could defeat all right of recovery. The statute was assuredly never intended to give a delinquent life tenant such a means of rendering worthless rights acquired under a certificate of tax sale made because of his delinquency.
The next matter of defense argued by defendants is that complainants' rights in the premises are res judicata. The guardian of the incompetent defendant, it appears, instituted proceedings in the Burlington County Orphans Court entitled, "In the matter of the Estate of Binney W. Earl, a Lunatic," and complainants as creditors of the lunatic's estate were made parties to those proceedings. A decree was entered June 24th, 1938. Only an "amended order" entered in that Burlington County cause is in evidence here. It recites that it was based upon a petition, a former order, and notice thereof. The petition and the first order are not in evidence, nor is this court advised as to any answer that may have been made thereto or of any claim made by any of the parties to this suit. The "amended order" discloses no adjudication whatever as to any claim of these complainants. How could this court find an identity of issues when the issues determined in that suit are unknown to this court? This defense of res judicata was not here pleaded nor was it proven by any competent evidence. Both are prerequisite to invoke application of the rule. Water Commissioners v. Cramer
(Court of Errors and Appeals), 61 N.J. Law 270;39 Atl. Rep. 671. A matter is not res judicata unless there be identity of the thing sued for, of the cause of action, of the *Page 577 
persons, of the parties or their privies, and of the quality of the persons for and against whom the claim is made, and, unless the judgment in the former action be so in point as to control the issue in the pending cause. Mershon v. Williams,63 N.J. Law 398; 44 Atl. Rep. 211.
Defendant Burlington County Trust Company, guardian of the incompetent, suggests that it is not a necessary party. InSearch v. Search, 26 N.J. Eq. 110, Chancellor Runyon declared it to be the duty of a complainant to make the guardian of a defendant declared a lunatic during the pendency of the action, a party. See, also, Ammon v. Wiebold (Court of Chancery),61 N.J. Eq. 351, 355; 48 Atl. Rep. 950; In re Martin (Court ofChancery), 86 N.J. Eq. 265; 98 Atl. Rep. 510. The defendant May Belle Earl suggests that she is not a proper defendant in this suit. She is the wife of the life tenant, Binney W. Earl, and, since his confinement in a sanitarium, has been in possession of the premises. If defendants should be decreed to redeem and fail to perform, their right to redeem would be barred. If the defendant May Belle Earl should then refuse to vacate the premises, this court would have jurisdiction to remove her therefrom; if she were not a defendant in the cause complainants would be obliged to bring ejectment against her to obtain possession.
Now, as to the merits of the case. Binney W. Earl was adjudged a lunatic by decree of this court entered April 6th, 1937. The procedure by notice provided in the Tax Sale Law had been followed to a conclusion prior to that adjudication. The taxes which Binney W. Earl had failed to pay amounted to $458 and were for one year only, 1932. On November 1st, 1933, sale was made, the lands were purchased by the Township of Burlington, and a tax sale certificate was delivered and recorded. Two years later, on November 19th, 1935, complainants' agent, William H. Carey, paid to the township $1,970.43, the amount then due on its certificate, and received from it an assignment thereof, which he recorded. Complainants then paid the taxes assessed for the year 1936, $381.92. On December 6th, 1935, William H. Carey, as agent for the complainants caused to be served upon *Page 578 
Binney W. Earl, personally, notice of the assignment of the certificate of tax sale with a statement of the amount paid by him therefor and of the amount due thereon, a demand for immediate possession, and further notice that, unless Mr. Earl redeemed said premises within six months from the date of service of the notice, his right of redemption would be forever barred. On June 6th, 1936, this additional time for redeeming had expired and no redemption had been made; the agent annexed to the assigned certificate of tax sale the notice to redeem and the affidavit of service thereof upon Binney W. Earl, the agent's affidavit that the premises had not been redeemed, an official certificate that no redemption had been made, and an official tax search. These papers were filed with the certificate of tax sale in the office of the clerk of Burlington County and duly recorded as a deed of conveyance of the premises. On November 25th, 1936, William H. Carey, as agent or "trustee," conveyed the premises and all his interest therein to Florence Beccadelli di Bologna, Princess di Camporeale, as trustee for Alexander Kingsland, and Anna Beccadelli di Bologna, Princess di Castelcicala. This deed was recorded January 16th, 1937, three months before the adjudication of lunacy was made.
Two distinct methods of barring an equity of redemption are authorized by the Tax Sale Law, (1) by notice, (2) by foreclosure in this court. R.S. 54:5-84 specifically provides that the right of redemption of a lunatic may be barred by a bill in equity to foreclose a tax sale certificate and a decree thereon. As authority for their contention that a life tenant and a remainderman are privies, defendants cite 50 C.J.tit. "Privity," § 3-2. While the text there reads "Privity in estates denotes the privity between assignor and assignee, donor and donee, grantor and grantee, joint tenants, landlord and tenant, lessor and lessee or sub-lessee, tenant for life and remainderman or reversioner and their respective assignees * * *," it is, ordinarily, the tenant for life and his assignee who are in privity; it is the remainderman and his assignee; the reversioner and his assignee. In 23 R.C.L. (at p. 567
¶ 116), it is flatly declared: "There is no privity between the tenant for life and the remainderman." See, also, Restatement ofthe Law, Property (at pp. 536, c.). *Page 579 
Privity in estate arises only between mutual or successiveholders of title to the same right or interest in the same property. In Buckingham v. Ludlum, 37 N.J. Eq. 137, 141;affirmed, 41 N.J. Eq. 539; 7 Atl. Rep. 647, Vice-Chancellor Van Fleet said: "And by privies is meant such persons as are privies in estate — as donor and donee, lessor and lessee, and joint tenants; or privies in blood — as heir and ancestor; or privies in representation — as executor and testator, or administrator and intestate; or privies in law — where the law, without privity in blood or estate, casts land upon another by escheat." InLitchfield, Admr. v. Crane, Admr., 123 U.S. 549; S.C.,31 L.Ed. 199, Chief Justice Waite said: "We have already seen that the term privity denotes mutual or successive relationship to the same rights of property." In 6 Words and Phrases, FirstSeries, 5606, privity is defined in exactly the same language and numerous decisions, state and federal, are cited. In 4 Wordsand Phrases, Fifth Series, 903, Stone v. Grenada Grocery Co.,180 Miss. 556, is cited in support of this statement: "`Privies' are those who stand in mutual or successive relationship to the same rights of property. `Privity' implies succession. He who is in `privity' stands in the shoes or sits in the seat of the owner from whom he derives his title, and thus takes it charged with the burden attending it." In Pool v. Morris, 29 Ga. 374; S.C.,74 Amer. Dec. 68, a controversy arose between life tenants and remaindermen in the same property. Evidence had been admitted by the trial court on the theory that there was privity in estate between the life tenants and the remaindermen. The appellate court said (at p. 69), "The rule is, that admissions are evidence against the parties who make them and their privies. This evidence was admitted upon the idea that Pool and wife were privies in estate to Allen and wife. Not so. A privy in estate is a successor to the same estate, not to a different estate in the same property. In this case, the estate of Allen and wife was during Mrs. Allen's life, and the estate of Pool and wife did not commence till the other was ended."
Defendants also, in this connection, lay stress on the decision in Callihan v. Russell (W.Va.), 26 L.R.A. (N.S.) *Page 580 1177; 66 S.E. Rep. 695. While, in that decision, the court said, "There is close privity of ownership between the remainderman and the life tenant. * * *," the court was self-evidently speaking of the facts before it. The opinion continues: "One is precluded from making a tax purchase wherethere is something in the circumstances of the case which rendersit inequitable, as between himself and the holder of the existingtitle, for him to become the purchaser. So says Judge Cooley inBlackwood v. Van Vleit, 30 Mich. 118." The opinion in theCallihan Case then continues: "In the case now before us, weclearly observe that which is so manifestly inequitable that itprecludes Calvin Russell from relying upon the purchase made inhis name from Moore and George." (Italics mine.) Lands had been conveyed by Callihan's father to a trustee, for the use and benefit of Callihan and his wife for their lives and the life of the survivor, with remainder to the five children of Mr. and Mrs. Callihan. Taxes not having been paid for one year, the land was sold at tax sale to strangers, Moore and George. The father and his five children had a right of redemption for one year. Mr. Callihan relied upon one of his sons to attend to the payment of taxes, but the son neglected to do so. Mrs. Russell, one of the children, was on unfriendly terms with her father and, just before the expiration of the time to redeem, she and her husband visited Moore and George, represented to them that Mrs. Russell had the right to redeem, and arranged to take title to the property at the expiration of the year. The conveyance was, at that time, made to the husband, Calvin Russell; Mrs. Russell recorded the instruments. The court points out that at the very time Mrs. Russell was negotiating for this purchase "her old father was in the same house asking the tax sale purchasers to take from him the amount due as for a redemption." His request was refused by Moore and George; instead, they accepted $60 from Calvin Russell and agreed to take a tax deed and then convey to him or, in case of redemption, to return the money paid. The suit was brought by the life tenant and the other four remaindermen to recover the land from Mr. Russell; the trial court dismissed the bill; the appellate court reversed the decree below. The relief *Page 581 
granted is worthy of note: The decree set aside the tax deed obtained by Moore and George and that made by them to Mr. Russell but it ordered repaid to Mrs. Russell the actual amount she paid the tax purchasers as for a redemption of the lands, and this, notwithstanding the clear fraud found to have been committed.
Complainants are not presently seized of an indefeasible estate in remainder. Under the will of Mrs. Earl their estates may be divested upon the occurrence of defined events. The estate of the complainants is entirely distinct and separate from that of the life tenant. The latter is limited both as to time and as to use while the estate in remainder if it results in possession will be unlimited both as to time and use. Complainants' estate in remainder does not come through the life tenant by succession; Binney W. Earl was never seized of the remainder; his rights and those of the remaindermen are mutually exclusive, neither may encroach upon nor interfere with the other. The life tenant and the complainants are not mutual or successive holders of the same right to the same property.
Reference should also be made to the will of Marie Binney Earl to determine what estates were created thereby and the relationship of the parties. It is entirely clear that the defendant Binney W. Earl takes, under the will of his mother, a life estate and nothing more. The remainder was bequeathed and devised to his child or children, if any, living at the time of her death. However, there was no child of Binney W. Earl living at the time of the death of Mrs. Earl and that provision of the will never took effect. The nephew and nieces of Mrs. Earl take under her will only in the event that, at the death of Binney W. Earl, he leaves no child him surviving. There is still the possibility that at his death a child may survive him. Such estates have been called "prospective estates," "presumptive estates," "contingent estates." Vice-Ordinary Lewis, considering a will giving to executors and trustees the residuary estate to collect the income therefrom and use it for the benefit of children surviving the testator, and then to pay over the principal to such children when they attain specified ages, said: "I think, therefore, that the *Page 582 
bequest of the residue estate to the trustees upon the trusts stated does not vest the legacies in the respective infants in a manner to make them the absolute owners of the property with no other person having either a present or prospective legal interest in it, * * *." In re Lucey, 98 N.J. Eq. 314;128 Atl. Rep. 677. See, also, Hughes v. Fidelity Trust Co., 119 N.J. Eq. 502,504; 183 Atl. Rep. 299. Whatever interest or estate the complainants may now have in the premises in question is subject to being divested if, at the death of Binney W. Earl a child or children survive him. No such privity in estate exists, I am convinced, between the life tenant and the complainants and no such relationship of confidence has been proven, as would preclude complainants from purchasing the tax sale certificate and barring the life tenant of his right of redemption, through foreclosure.
There is no specific limitation in the Tax Sale Act as to who may or may not purchase at tax sale. Defendants cite the case ofFarmer v. Ward, 75 N.J. Eq. 33; 71 Atl. Rep. 401, where Vice-Chancellor Stevenson, construing the Martin Act, held that a mortgagee was excluded from becoming a purchaser at tax sale so as to be able to cut off the equity of redemption of the mortgagor, by notice." The relationship which exists between a mortgagor and a mortgagee is very different from that here existing between the life tenant and complainants, whose estate in remainder came not through him but by devise of Mrs. Earl, and whose estate may be divested by birth and survival of a child or children. However, Vice-Chancellor Stevenson held that, "the equities between the owner and the mortgagee, in case the mortgagee redeems, are protected and enforced by the most ample right of subrogation which is given to the mortgagee against the mortgagor." The Vice-Chancellor added: "It does not follow that the defendant must lose the amount of the tax lien which she paid to the tax collector in the form of a bid for the property. I think she stands in the same position as if instead of bidding the amount of the tax lien at the sale she had paid the same amount in discharge of the tax lien before the sale was held. If the Martin Act does not contemplate that the mortgagee who is specially cared for by *Page 583 
the act shall be a purchaser at the tax sale, it follows that when a mortgagee assumes to do this thing what in fact he does is to pay off the tax lien and acquire the same by subrogation." * * * "The complainants have sought to strip the defendant of her tax title or tax lien without paying her anything for it; * * *." "This property was primarily bound to pay the tax which the defendant paid, and the defendant had the right to pay this tax and collect it at the same time when she collected the amount of her mortgage. The land was offered to the public for sale in the foreclosure suit charged with the amount of the taxes paid by the defendant as a prior encumbrance. No court of equity in my judgment would give to the complainants the relief which they ask for against the defendant which involves compelling the defendant to surrender her tax title excepting upon condition that complainants pay the defendant the amount represented by the tax certificate with interest."
It might suffice, in this case, to apply the principle of subrogation to the facts, decree that complainants be subrogated to the rights of the municipality and permit enforcement of those rights. However, the present Tax Sale Law seems specifically to provide for such a situation as here exists. After Binney W. Earl had permitted the taxes to remain unpaid and the municipality had advertised sale of the lands for unpaid taxes, it was compelled to purchase the certificate. It was then that complainants were forced to move to protect their possible future enjoyment of the premises. There is no suggestion here but that the primary obligation to pay taxes was that of the life tenant; no suggestion that complainants did not act in perfect good faith, or that, if they had not paid the municipality, it would not have proceeded until the equity of redemption had been cut off by notice or through foreclosure. Complainants but ask that the life tenant be decreed to redeem from them and on the same terms that he would have been forced to meet to redeem from the municipality.
The Tax Sale Law contemplates payment to the municipality, after a tax sale and purchase by it, and an assignment by it of the certificate of sale; it makes specific provision for that contingency and enforcement of the rights and the lien which may be so acquired. R.S. 54:5-34 reads: *Page 584 
"The officer making sale shall strike off and sell to the municipality in fee for redemption at eight per cent., any parcel of real property for which there shall be no other purchaser, and the municipality shall have the same remedies and rights as other purchasers, including the right to bar or foreclose the right of redemption."
R.S. 54:5-42 provides that when a sale is made in the enforcement of a municipal lien, the lien shall pass, with the title, to the purchaser. In Central Union Trust Company of NewYork v. Willat Film Corp., 99 N.J. Eq. 748; 133 Atl. Rep. 780,
it was held that the assignee of a certificate of tax sale held by a municipality succeeds to the municipality's rights thereunder, including the right to priority of lien.
Section 54:5-56 of the Revised Statutes is entitled, "Redemption by mortgagee or person not primarily liable." It reads:
"When the redemption is made by a mortgagee or other personnot primarily liable to pay the municipal lien, but having a lienor interest in or on the land, the person so paying, if he soelect, shall succeed to the municipal lien paid by him. * * *" (Italics mine.)
The case of Farmer v. Ward, supra, was decided in October, 1908. This statutory provision for redemption by a person not primarily liable was enacted in 1918 (P.L. 1918 ch. 237).
A subsequent section, R.S. 54:5-61 makes it clear that the intention of the legislature was to give to the person who, though not primarily liable, pays the obligation and takes an assignment of the tax sale certificate, the same rights and remedies it gives to a stranger who purchases at the original sale. In this section the legislature did not choose to continue speaking of "the purchaser" of the tax title but provided that "the holder of the tax title," upon compliance with the provisions of section 54:5-62 should be entitled for his expenses to such sums as he may have actually paid out for recording fees, fees for services of notice, c. This thought is emphasized in R.S. 54:5-62 and in R.S. 54:5-63 and, in article 8 of the Tax Sale Law, giving the right to bar a right of redemption the first section, R.S. 54:5-77, providing for services of a notice of the right to redeem, directs this notice to be given not by the "purchaser" at the tax sale, but by "the holder of the tax title." *Page 585 
It is inconceivable that the legislature could have intended a situation such as is suggested by the defendants. They argue that a remainderman, because he has "an interest in the land sold," may not be an original purchaser at tax sale. They cite Farmer
v. Ward as their authority for this proposition and then conclude that the statute precludes a remainderman from ever taking an assignment of a tax sale certificate and foreclosing it. However, as I have shown, the very language chosen by the legislature demonstrates an intention to permit one not primarily liable for payment of taxes but having an interest in the land, to redeem, to compel an assignment of the tax sale certificate, and to thus obtain every right to enforce the lien of the municipality.
The defendants in this cause have not offered to reimburse complainants. Privity in estate and interest unquestionably exists between co-tenants and, as between them, there also exists a confidential relationship. Nevertheless, this court has held, as has the Court of Errors and Appeals, that a co-tenant who discharges a lien on the common property has a right to contribution from his co-tenant and is entitled to hold, as security, a lien upon his co-tenant's share of the property.Weller v. Rolason (Court of Chancery), 17 N.J. Eq. 13;Breitman v. Jaehnal (Court of Chancery), 99 N.J. Eq. 243,245; 132 Atl. Rep. 291; affirmed, 100 N.J. Eq. 559;135 Atl. Rep. 915; Roll v. Everett (Court of Errors and Appeals), 73 N.J. Eq. 697; 71 Atl. Rep. 263. In the latter case the court said, "The law is well settled that where one tenant in common acquires a tax title or redeems land from a tax sale, his act inures to the benefit of his co-tenant upon their reimbursing him for their proportionate share of the amount paid by him. * * * The right of a tenant in common who discharges a lien upon the common property, is to contribution from his co-tenant, and as security he is entitled to a lien on his co-tenant's share of the property. That lien may be enforced in equity by treating the tax deed as valid and subsisting for that purpose * * *." This court has also held, where a life tenant was derelict in his duty to pay taxes, that the remainderman who paid the taxes was entitled to reimbursement from the life tenant, at least *Page 586 
to the extent of the rental value of the premises in question, and that such reimbursement could be had from the life tenant's separate estate or through the appointment of receiver to collect the rents, issues and profits of the premises in question.Woolston v. Pullen, 88 N.J. Eq. 35; 102 Atl. Rep. 461; Murch
v. J.O. Smith Manufacturing Co., 47 N.J. Eq. 193;20 Atl. Rep. 213; 94 A.L.R. 311; Annotations, 17 A.L.R. 1403.
While the bill filed in this cause is in form the usual foreclosure bill, complainants ask only that the court protect them to the extent of the amount they paid to the municipality on assignment of the tax sale certificate, with such interest, costs and expenses as would be allowed the municipality if it were the party complainant. Defendants contend that this court should not grant such relief, as complainants "have completely shifted their ground so far as concerns the relief which they seek." While defendants direct their argument to the form of relief prayed, their insistment is that complainants lose the moneys they have paid and be deprived of all relief. Even in the Callihan Case, which defendants urge is dispositive of the present issues, reimbursement was decreed although clear fraud was proven.
Foreclosure in equity is authorized by the Tax Sale Law as an additional method of barring the right of redemption. The bill to foreclose may be filed at any time after the expiration of the term of two years, "whether notice to redeem has been given or not;" a right to redeem, however, continues after bill filed and "until barred by the decree of the Court of Chancery." R.S.54:5-86. The legislature, in R.S. 54:5-85, declares: "The provisions of this article shall be liberally construed as remedial legislation to encourage the barring of the right of redemption by suits in the Court of Chancery and for the decreeing of marketable titles therein." The legislature further declares its intent, in R.S. 54:5-87, that the Court of Chancery "give full and complete relief under this chapter, in accordance with other statutory authority and with the practice of the court, to bar the right of redemption and to foreclose all prior or subsequent alienations and descents of the lands and encumbrances thereon, except subsequent *Page 587 
municipal liens, and to decree an absolute and indefeasible estate in inheritance in fee-simple, to be vested in the purchaser."
The evidence in this cause discloses that, on a petition for instructions, the Orphans Court of Burlington County directed the guardian of the incompetent to pay out of funds of the ward which might come into its possession not only the current taxes on the premises but various other items which a life tenant must pay. The tax assessment which Binney W. Earl failed to pay was $458, the amount directed by the Orphans Court to be paid annually by the guardian of the incompetent to protect his life estate is approximately $1,016. It seems evident that the life tenant not only should but could have paid the taxes which, unpaid, resulted in the tax sale, and that the value of the life estate must greatly exceed the amount claimed by complainants. The decree of the Orphans Court directing these payments indicates that the value of the use and occupation of the premises in question is at least the value of the items so ordered to be paid. The inescapable inference therefore is that it would be against the interests of the incompetent to permit his right to redeem to be lost when it can be saved to him by payment of the amount due complainants. I am satisfied that it is only fair and just that the amount due the complainants be ascertained and charged as a lien on defendant's estate and interest in the land. If necessary to the making of such a decree, there is ample authority for moulding these proceedings to accomplish that end. Such procedure is in accord with the changes that have taken place without statutory intervention in mortgage foreclosures in this court. See Blue v. Everett, 56 N.J. Eq. 455 (at p. 456);39 Atl. Rep. 765; Sears, Roebuck Co. v. Camp, 124 N.J. Eq. 403;1 Atl. Rep. 2d 425.
Defendants, as a matter of right, are entitled to redeem in this suit upon payment of the amount determined by the court to be due complainants. A suit under the statute to bar the right of redemption is, in effect, a suit in strict foreclosure. In such a suit the court determines the amount due complainant or complainants and directs that payment thereof be made within a specified time and in a specified *Page 588 
manner; only upon default of such payment is the right of the defendant to redeem barred by the decree.
In view of this practice and my findings in this case, I shall advise a decree that complainants presently hold the lien previously held by the municipality, that the amount due complainants be calculated as it would if the municipality still held the certificate of tax sale, and that the defendants pay the amount so ascertained to be due within a certain time and in a certain manner and that, in default of such payment, any right of redemption of the defendants shall be barred. The time and manner of payment will be fixed, on notice, when counsel appear to fix the form of the decree and shall have fully informed the court as to the value of the life estate, the income which it is and has been producing and the present or future possibility of payment out of funds of the incompetent.