The F.C. Becker Realty Co. in and prior to 1922 was the owner of land in Hasbrouck Heights and Lodi which it caused to be delineated on a map entitled "Section No. 2 map of Prospect Hills No. 2 Hasbrouck Heights and Lodi, N.J. property of the F.C. Becker Realty Co.," which map it filed in the Bergen County clerk's office December 29th, 1922. On that map it showed the land it owned subdivided into lots and contained in 14 separate blocks which front on various streets laid out on the map. In some of the 14 blocks the lots comprise the entire block while in other blocks showing lots there are blank spaces not laid out into lots and those blank spaces indicate land owned by others than Becker Co. Altogether there are approximately 475 lots shown on the map. Becker Co. proceeded to and did convey all of its lots, each of its deeds containing restrictions which varied somewhat in form as to cost of building and setback from street line, but all provided "that there shall not be erected on any part of the property herein conveyed any building in which shall be carried on any business offensive, noxious or detrimental to the use of the land in the vicinity of said lots for private residences, nor shall said land be used for any purpose which might or could create a nuisance." It thus appears that there was a general scheme or plan adopted by Becker Co. for the development and conveyance of its property for residential purposes and that by insertion of said restrictions in all its deeds it was intended that each of its grantees, while bearing the burden of such restrictions, was to have the benefit flowing therefrom; hence any one of said grantees and his assigns has the equitable right to enforce the restrictions against any other grantee and his assigns. DeGray v. Monmouth Beach, c.,50 N.J. Eq. 329; affirmed, 67 N.J. Eq. 731; Dettsloff v.Hockstetter, 96 N.J. Eq. 391; Humphreys v. Ibach, 110 N.J. Eq. 647; La Fetra v. Beveridge, 124 N.J. Eq. 24; Palmer v. CircleAmusement Co., 130 N.J. Eq. 356. The fact that in the Becker Co.'s deeds there was slight variation in the form of the restrictions will not vitiate the restriction which applied to the general plan of development. Sanford v. Keer, 80 N.J. Eq. 240; Humphreys v. Ibach, supra; Palmer v. Circle AmusementCo., supra. *Page 94 
Said map shows as part of the lands owned by Becker Co., lots numbered 170 to 175, lots 178 and 179 and lots 182 to 188, all fronting on the southerly line of Williams Avenue and contained in a block bounded by Williams Avenue, Lawrence Avenue, Oak Grove Avenue and Boulevard. They are the only lots shown on the map in that block which is about 900 feet long and about 250 feet in depth, and between lots 175 and 178 and between lots 179 and 182 are vacant and unnumbered spaces each 50 feet in width. The ownership of the unplotted part of the block and the vacant spaces was not in Becker Co. By deed dated January 14th, 1928, Becker Co. conveyed lots 186, 187 and 188 to defendant's predecessor in title, that deed containing a restriction that "no building (outbuildings excepted) shall be erected on said lots of less than one and one-half or more than two and one-half stories in height, or with a flat roof, or nearer than 30 feet to the line of any street; that there shall not be erected on any portion of said lots any dwelling house costing less than $2,000; that there shall not be erected on any part of the property herein conveyed any building in which shall be carried on any business offensive, noxious or detrimental to the use of the land in the vicinity of said lots for private residences, nor shall said land be used for any purposes which might or could create a nuisance." By deed dated August 20th, 1930, Becker Co.'s grantees conveyed said lots to defendants, that deed being made subject to "present restrictions on property." Lots 172 and 173 were conveyed by Becker Co. April 29th, 1922, by deed which contained the identical restrictions last above quoted as were contained in the deed to defendants' predecessors in title, and Becker Co.'s grantees conveyed said lots 172 and 173 to complainants February 20th, 1946, by deed which recited that such conveyance was "subject to restrictions of record."
Lots 186, 187 and 188 were vacant at the time of their conveyance to defendants and defendants proceeded to erect a building thereon with a flat roof, which building was constructed for use as a gasoline service station, whereupon one Kobryn and wife who were then the owners of the adjoining lots 184 and 185; instituted suit in this court to restrain the *Page 95 
defendants from violating the restrictions applicable to their property and that suit proceeded to trial and final decree was entered May 4th, 1931, which recited that the defendants had erected on their lots a one-story, flat-roof building for use as a motor vehicle service station including the sale of gasoline, in violation of covenants restricting the use of said lots and that the carrying on of the business of a motor vehicle service station is detrimental, noxious and offensive to the use of the Kobryn lots for residential purposes. The decree ordered the defendants to remove from their premises the building located thereon and the fixtures and appurtenances used in connection therewith and enjoined the defendants from using their said premises in violation of the terms of said restrictive covenants. That decree was amended November 20th, 1931, on defendants' motion and by consent of the complainants in that suit so as to permit the defendants to remodel their building to comply with the restrictions contained in their deed, whereupon the defendants remodeled their building so as to give it a peaked roof and to make it adaptable for residential use, and they removed the gasoline tanks and pumps and appliances they had placed on their lots and their lots and building so remained until about August 1st, 1947, when defendants again installed gasoline tanks and pumps and appliances in connection with the use of their lots as a gasoline service station and proceeded to alter their building for such business use, whereupon the complainants instituted this suit wherein they seek to enjoin the defendants from the proposed use and operation of their land and building as a gasoline service and filling station and to require them to restore their premises so as to conform to the covenants and restrictions applicable to their lots.
Counsel for complainants urge that the decree of this court inKobryn v. Szalai is res judicata in favor of complainants in this suit, but I regard that decree as settling the subject-matter of that suit only as between the parties thereto and their privies and that it cannot operate in favor of complainants here who were not parties to the Kobryn suit and who do not stand in privity with Kobryn. Mershon v. Williams,63 N.J. Law 398; Di Bologna v. Earl, 130 N.J. Eq. 571. *Page 96 
I think there can be no doubt that the primary purpose of the restrictions which were imposed by Becker Co. on the lots which complainants and defendants now own and on the adjacent lots, was to bring to that area buildings erected for residential purposes only and to protect the area from any kind of business which would be harmful to or detract in any respect from the primary object sought to be achieved in the development of the tract. The restrictions constituted an inducement to purchasers seeking a quiet and orderly locality in which to establish homes and complainants purchased their lots relying on the general plan providing for a residential neighborhood. Prior to their purchase a dwelling house had been erected on their lots conforming in all respects to the restrictions imposed thereon, which dwelling complainants occupy with their children as their home; their property with improvements they have made to the building, stands them in about $16,000. Others beside complainants have been attracted to this particular area and the restricted lots as well as one of the 50 foot plots not owned by Becker Co. lying between complainants' dwelling and defendants' lots are wholly occupied by five private dwellings.
The defendants urge as a defense to complainants' cause of action that a gasoline service station is not prohibited by the restrictions on their lots in that it is not a "business offensive, noxious or detrimental to the use of the land in the vicinity of said lots for private residences."
Use in the restrictions of the word "detrimental" connotes something else than "offensive" and "noxious" because any use which is offensive or noxious is detrimental and so I take the word "detrimental" as intended to refer to a use less than offensive or noxious and which might be harmful or injurious in any respect to the area for private residences. The business in which defendants propose to engage is inimical to the general development scheme of private residences in which complainants and their neighbors joined, in that it militates against the desirability of the lands in the vicinity for residential purposes only. It will be the first business encroachment on the general residential scheme and certainly will not contribute to the desirability of adjacent land for residential purposes. *Page 97 
A gasoline filling station in a dwelling house community presents such a contrast to the neighboring residences that its very appearance is detrimental to the community scheme because it is blatant notice to all persons seeking to acquire private homes that this is not an area in which they should locate and there results not only a depreciation in value of residences already constructed in the vicinity of the gas station, but a tendency to affect similarly all other property which Becker Co. sought to bring within its neighborhood building scheme. What defendants propose to do is to open a drive-in gasoline station for the sale of gasoline to the public and for that purpose to maintain pumps and store gasoline on the premises in buried tanks. I consider such a business as detrimental (within the intent of the restrictions) to the use of adjacent property for private residences because it constitutes a potential and unusual fire hazard in the neighborhood; because offensive odors and fumes are likely to arise from the gasoline dealt in and from exhausts of motor vehicles brought to the station; because such vehicles going to and coming from defendants' place of business will interfere with the peace and quiet of the neighborhood and, crossing the sidewalk to enter and leave, will create a traffic hazard which does not now exist and make it a dangerous place for neighboring residents and their children who must pass the place. I also consider such a business detrimental to the use of the land in the vicinity thereof for private residences in that it would create a marked change in the character of the neighborhood scheme and render the land less attractive for private homes. Complainants would share with other property owners in the detrimental consequences which would follow change in the residential character of the neighborhood and would be personally damaged because, as their real estate expert testified, their property would be less desirable for residential purposes and consequently would suffer depreciation in value.
Defendants also urge that the restrictions applying to defendants' lots should be held to be ineffective because of the character of buildings which have been erected in the neighborhood and they show that within distances varying from 600 feet to a half mile or more from complainants' lots there *Page 98 
are structures which are being used for various business purposes, including gasoline service stations, but all those structures are outside the restricted land shown on the Becker Co. map and as to the block in which complainants' and defendants' lots are located it is not shown that any building in that block is being used for any purpose other than a private residence, except that on the southwest corner of Williams Avenue and Boulevard 600 feet distant from complainants' lots (which corner was not owned by Becker Co.) there is a three-story brick building containing stores and living quarters which had been erected many years prior to the dates complainants and defendants acquired title to their lots and this is the non-conforming structure shown to be nearest to complainants' lots. There is no evidence that on any lot shown on the Becker Co. map there has been erected any structure which violates the restrictions pertaining thereto. On the contrary the testimony shows that all structures which have been erected on the lots shown on that map as well as on unplotted lots thereon, both before and after defendants acquired title to their lots, have been residential dwellings. Whatever difference is shown to exist in the character of the adjacent neighborhood is not sufficient reason for not enforcing the restrictions against defendants' property. Morrow
v. Hasselman, 69 N.J. Eq. 612; Sanford v. Keer, supra;Sandusky v. Allsopp, 99 N.J. Eq. 61; Humphreys v. Ibach,supra.
A further defense urged for defendants is that in 1929 the governing body of Hasbrouck Heights adopted an ordinance zoning for business purposes the south side of Williams Avenue, including the lots now owned by complainants and defendants, which ordinance is still in effect and it is contended that because of that ordinance the operation of a gasoline service station on defendants' lots should be permitted. The existence of such ordinance cannot operate to deprive complainants of such rights as they have against defendants by virtue of the building restrictions which were placed on defendants' lots. Pumo v.Fort Lee, 4 N.J. Mis. R. 663; Margolis v. Maplewood, 5 N.J.Mis. R. 131. *Page 99